JAMES VAN SCHOONHOVEN, Appellant, *v.* EDMUND J. CURLEY et al., Respondents.

In January, 1876, defendants delivered to J. G. & Co. a receipt, stating in substance that they had received fifty barrels of whisky "Made in the month of March, 1875" in their "distillery bonded warehouse," in Kentucky, to be held on storage and for account of and subject to the order of said J. G. & Co., "deliverable only after the payment in cash of short price and the U. S. government tax and storage." There was indorsed on the receipt a copy of a statute of Kentucky providing, in substance, that all warehouse receipts issued under the act should be negotiable and transferable by indorsement in blank, the same as bills of exchange. The act also prohibited any warehouseman from transferring, incumbering or removing property for which such receipt had been given, without written consent of the holder of the receipt and production thereof, and authorized any person aggrieved by a violation of said provision to maintain an action against the offender. The whisky had been distilled by defendants in March, 1875, and before April 5, thereafter, had been deposited in their said warehouse as required by the United States Statutes (§ 3293), and defendants gave the bond required that they would pay the tax and remove the whisky within one year from date. On April 7, 1876, defendants paid the tax on the whisky, withdrew it from the warehouse and shipped it to J. G. & Co., of New York, by whom it was received about May 1, thereafter. In June, 1876, J. G. & Co., for a valuable consideration, delivered the receipt to plaintiff, also a bill of sale of the whisky, which was described as "in bond or tax paid," and a letter to defendants requesting them to deliver the whisky to the plaintiff; the latter exhibited these papers to defendants and demanded the whisky. In an action for conversion *held*, that defendants were warehousemen not in the usual sense, but from necessity and force of law; that the provisions of the United States Statutes (§ 3271 *et seq*,) in reference thereto were to be considered as part of the contract, evidenced by the receipt; that as those provisions required the withdrawal of the property from the warehouse within a year from the date of entry, with the expiration of the year the obligations of the defendants to keep the property therein ceased; that plaintiff, having received the receipt after the expiration of the year, was chargeable with notice that the custody of the property by defendants as keepers, of a government "distillery bonded warehouse," had ceased, and he was put upon inquiry to ascertain what had become of it; that his position, under the Kentucky statute, was similar to that of an assignee of a bill of exchange after maturity, and he took the receipt subject to all the equities, between the parties; and therefore that plaintiff was not entitled to recover.

(Argued June 3, 1881 ; decided October 4, 1881.)

APPEAL from a judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 11, 1880, which affirmed a judgment in favor of defendants, entered upon an order dismissing the complaint on trial. (Reported below, 21 Hun, 205.)

The action was for the alleged conversion of fifty barrels of whisky.

The defendants were copartners under the name of E. J. Curley & Co., and as such carried on the business of distillers, and were the proprieters of a "distillery bonded warehouse" at Camp Nelson, Kentucky. On the 25th of January, 1876, they delivered to James Gill & Co. a paper writing in these words:

"CAMP NELSON, KENTUCKY, *January* 25, 1876.

"Received in the distillery bonded warehouse of E. J. Curley & Co., No. 3, 7th district, Kentucky, the whisky herein below described, to be held by us on storage, and for account of and subject to the order of Messrs. James Gill & Co., New York, and deliverable only after the payment, in cash, of short price, and of the United States government tax and storage on said whisky, and on the written order of the holder of this receipt to us, and subject to the following conditions.  *  *  *  *

"Marks and serial numbers — Blue Grass, 674 to 723.

"Number and description of package — Fifty (50) barrels Blue Grass Bourbon whisky, made in the month of March, 1875, containing twenty-two hundred sixty-eight, 6–100 (2268 6–10) proof gallon, good eight-hoop iron bound, hand-made packages. We guarantee that the outs shall not exceed two and one-half gallons to the barrel the time of withdrawal.

"E. J. CURLEY & CO."

There was indorsed on the back of this receipt a copy of an act of the General Assembly of the Commonwealth of Kentucky relating to warehousemen and warehouse receipts. It declares (§ 3) that "all receipts issued by any warehouseman, as provided by this act, shall be negotiable and transferable by indorsement in blank, or by special indorsement, and with like liability as bills of exchange now are, and with like remedy

thereon." It prohibits any warehouseman from transferring, incumbering or removing beyond his immediate control, property for which a receipt had been given without the written consent of the holder of the receipt, and the production thereof. By a subsequent section (8) that any person aggrieved by the violation of any of the provisions of this act shall have and maintain an action against the person or persons violating any of its provisions, to recover all damages which he or they may have sustained by reason of such violation. On the 21st of June, 1876, James Gill & Co., for a valuable consideration to them paid, delivered the receipt to the plaintiff, and at the same time executed and delivered to him a bill of sale, in these words:

"NEW YORK, *June 21st*, 1876.

Mr. James Van Schoonhoven,

Bought of James Gill & Co:

In bond or tax paid, 50 barrels, Blue Grass whisky, 2,268 60–100 proof gallon at $1.80.                $4,083.48

Received payment,

JAMES GILL & CO."

Said firm also delivered to plaintiff a letter addressed to the defendants, requesting them "to deliver to James Schoonhoven" certain whisky (describing it as in the receipt). In September, 1876, in New York city, the plaintiff exhibited the receipt and bill of sale, and this letter to one of the defendants, and demanded the whisky mentioned in it. He replied that he could not comply, as it had already been delivered to James Gill & Co. It further appeared that the whisky was distilled by the defendants and removed into their distillery bonded warehouse between March 9 and 13, 1875. On the 1st of April, 1875, or within five days thereafter, it was entered for deposit in said warehouse, as required by section 3293 of the United States Revised Statutes, and the defendants on the same day gave their bond with sureties as required by law, conditioned that they would pay the tax on the whisky, as specified on the entry, before removal from the distillery warehouse, and within one year from the date of the bond. On the 7th of April, 1876,

the defendants paid the tax, withdrew the whisky from the warehouse, and on about April 15, 1876, shipped it to James Gill & Co., New York, and it was received by them about May 1, and before May 15, 1876. Prior to this date, and on the 24th of April, James Gill & Co. refunded to the defendants the tax paid by them, together with exchange and withdrawal fee. At the close of the evidence a motion was made in general terms to dismiss the complaint, and it was granted.

*S. B. Brownell* for appellant. The law of Kentucky governs the warehouse receipt in suit, and under it defendants are liable to plaintiff for the value of the whisky described in it. (*Greenbaum* v. *McGibbon*, 10 Bush, 419; *Whitlock* v. *Hay*, 58 N. Y. 484; *First Nat. Bank* v. *Shaw*, 61 id. 283; *Cochran & Fulton* v. *Respy, etc.*, 13 Bush, 495; *Willy* v. *Mulledy*, 78 N. Y. 310.) The statute indorsed on the receipt estops defendants from alleging or setting up any state of facts inconsistent with the full and complete observance of said act and the terms of said receipt. (*Griswold* v. *Haven*, 25 N. Y. 595; *Armour* v. *Mich. C. R. R.*, 65 id. 111; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 id. 30, 59, 60; *Holbrook* v. *N. J. Zinc Co.*, 57 id. 616; Story on Part., § 100.) The court erred in holding that, after the expiration of a year from the date of the receipt, defendants were under no further obligations to the transferee of the receipt. (U. S. R. S., § 3271.)

*W. A. Beach* for respondents. Parties purchasing negotiable paper, after maturity, are charged with knowledge of the circumstances impeaching it. They take subject to all defenses of the maker against it. (1 Pars. on Notes and Bills, 275; Chitty on Bills [6th Am. ed.], *126, 127.) Had the spirits remained in defendants' bonded warehouse, after the payment of the tax which was due on or before April 6, 1876, as appeared on the face of the receipt, they would have, *ipso facto*, been forfeited to the United States government. (U. S. R. S., § 3288.) This forfeiture attaches immediately, without any seizure or proceedings for condemnation. (*Henderson's Dis-*

*tilled Spirits*, 14 Wall. [U. S.] 44, 57 ; *The Mary Celeste*, 2
Lowell, 354.)   It is always a sufficient answer to the obligation
expressed in a negotiable interest of this character, that it be-
came impossible to perform the contract without violating the
laws of the country. (*Brown* v. *Delano*, 12 Mass. 370, 373.)
Plaintiff must recover on the cause of action alleged in the
complaint, and not on any different cause of action that may
incidentally appear in the case. (*Bernhard* v. *Seligman*, 54 N.
Y. 661 ; *Garvey* v. *Fowler*, 4 Sandf. 665 ; *Gasper* v. *Adams*,
28 Barb. 441 ; *Curtiss* v. *Marshall*, 8 Bosw. 22 ; *Salters* v.
*Genin*, 7 Abb. 193 ; *Arnold* v. *Angell*, 62 N. Y. 508 ; *Hollis-
ter* v. *Engelhart*, 11 Hun, 446.)

DANFORTH, J.   The differing views of the judges of the
learned court whose decision is before us, as to the proper con-
struction and effect of the receipt, indicate difficulty in the
question, but we think it was well disposed of. Not only must
the provisions of the United States Statutes control, but the
contract appears to have been actually made in reference to
them.   It acknowledges the receipt of the whisky, not gener-
ally, but for " storage " in the " distilling bonded warehouse ; "
and while it is dated 25th January, 1876, states that the whisky
was made in March, 1875, and contains a guaranty that the loss
by evaporation, etc., shall not exceed two and one-half gallons
at the time of " withdrawal." These phrases represent facts
or conditions made important by statute. The defendants
were warehousemen, not in the usual sense, but from necessity
and force of law. Their duties were by statute confined to a
single article, and that of their own production. As the place
of storage of that article is defined by statute, so is the length
of time prescribed during which the storage may continue. As
distillers, they were required to provide a warehouse on their
distillery premises, constituting a part of it and to be used only
for the storage of distilled spirits of their own manufacture
until the tax thereon is paid. This upon approval by the
proper officer " is declared to be a bonded warehouse of the
United States, to be known as a distillery warehouse " (R. S. of

U. S., § 3271), and placed in the joint custody of the proprie-
tor thereof and a storekeeper assigned to it by the government.
(R. S. of U. S., § 3274.)   With formalities prescribed by stat-
ute, spirits distilled by the owner are removed into this ware-
house (§ 3287) under an entry which must contain among other
things (§ 3293) the name of the person making it, the date
thereof and the amount of tax.   The distiller is at the same
time required to give a bond, as was done in this case, and
which in substance requires him to remove the property there-
from within one year from its date; for by section 3289, no
distilled spirits on which the tax has been paid can " be stored
or allowed to remain on any distillery premises, under a pen-
alty of a forfeiture of all spirits so found;" and section 3294
makes provision for the withdrawal of such spirits from the
warehouse.   These provisions were known to or at least bind-
ing upon both parties at the time of making the receipt.   They
become therefore a part of the contract and are essential in de-
termining the rights of the parties as so modified.   (*Clark* v.
*Pinney*, 7 Cow. 681; 2 Parsons on Cont. 515.)   The statu-
tory provisions may be deemed referred to or written in the
receipt.   It will then read as declaring that the whisky is to be
held on storage in the distillery bonded warehouse not exceed-
ing one year from the date of entry; and this (in view of the
statement of the time of its manufacture and the law relating
to the subject [§ 3293]), is the same as saying not exceeding
one year from April 5, 1875; for it is there said the entry shall
be made within five days after the beginning of the month
succeeding its manufacture.   With the expiration of the year,
then, the receipt, so far as it defined the obligation of the de-
fendants, ceased.   They were no longer bound to keep the
property in the warehouse, for they had no power to do so.
(*Dunbar* v. *Mitchell*, 12 Mass. 373.)   It could not have been
done without violating the law and subjecting the property to
forfeiture.   This could not have been contemplated by either
party.   At the end of the year the defendants in fact paid the
tax and the owners resumed possession of the property.   The
receipt was in their hands at the time, and they retained it.

But it cannot be pretended that the possession of the receipt would have availed James Gill & Co., in any subsequent demand of the property. One who pays his negotiable note or bill of exchange before maturity, and without exacting its delivery or cancellation, runs no other risk (save to a *bona fide* holder) than his inability to prove payment if again called upon by the payee or by one who took it after it became due. How, then, can the possession of this receipt, acquired after its force was spent and after, in fact, its subject-matter had been delivered to the bailor, avail the plaintiff? At common law, not at all. But he relies on the statute of Kentucky to shut out the equities which, against Gill & Co., would prevail. That statute regards the plaintiff as the holder of a negotiable instrument; likens him to one acquiring a bill of exchange by proper transfer. In this capacity, if we are right in our construction of the receipt, he cannot recover. He received it after it reached maturity, when the specific obligation of the defendants had ceased; and as he is chargeable with knowledge of the law, he is thereby and by the language of the receipt affected with notice of that fact. It stood in the line of his title to the property. He bought the whisky of James Gill & Co. They did not deliver it to him, but, as the complaint states, "as a means of delivery" thereof, they gave him the receipt. It contained a clear notice to him that the custody of it by the defendants as keepers of a government or "distillery bonded warehouse" had ceased. He was then put upon inquiry to ascertain what had become of it. If made, it would have resulted in the information obtained subsequently by him in September — its delivery in due time to the owners. That is, that the terms of the obligation had been fulfilled; the duty owing by the warehouseman to the owner of the whisky, paid or discharged. His position in this regard is not different from that of an assignee of a bill of exchange after maturity. As to that, after it is due, "it comes disgraced to the indorsee, and it is his duty to make inquiries concerning it. If he takes it, though he give a full consideration for it, he takes it on the credit of the indorser and subject to all the equities with

which it may be incumbered." (Byles on Bills, 262 [6th Am.
ed.], citing Lord ELLENBOROUGH.) Except for the statute of
Kentucky, the plaintiff would have no other rights than the
holder of a special contract, and those the same as belonged to
his assignor. By virtue of that statute he has none greater
than the holder of a bill of exchange negotiable by law. As
such he could not recover. Moreover, the bill of sale to plaint-
iff expressly declares the whisky to be "in bond or tax paid."
It went with the receipt. It was notice that one or the other
of these conditions affected the whisky. Knowing the law,
the plaintiff must have known that if the tax was paid the
property could not be in the distillery bonded warehouse, men-
tioned in the receipt. If in bond, it was necessarily elsewhere ;
and in the relation itself there was sufficient to put him upon
inquiry. For if either fact existed, the liability of the defend-
ants was modified. They must have ceased to hold the prop-
erty in the character in which they gave the receipt, and could
not be liable for goods in the described warehouse. As general
depositaries, or persons having charge of the goods of another,
they might have been liable had they retained the spirits. Such
a liability does not here exist, for the property was restored to
its owners. Nor could the defendants be bound by the receipt
any longer than the property could lawfully remain in the
warehouse. The appellant, however, claims that under the
statute of Kentucky before quoted (§ 8), he is entitled to dam-
ages as one "aggrieved" by the omission of the defendants to
retain the property until the delivering up of the receipt. It
is well answered by the respondent; the complaint makes no
case for that claim, and whether the courts of this State would
entertain such an action need not be decided. The terms of
the receipt are special. By reason of them the defendants have
incurred no liability, for, as to James Gill & Co., they per-
formed their obligation. As to the defendants, none is due,
for they claim under a fraudulent transfer of an assumed right,
and if they suffer, it is by reason of their own negligence.

The judgment should be affirmed.

All concur, except FOLGER, Ch. J., absent from argument.

Judgment affirmed.