(Decided 9th January, 1885.)

### THE STATE OF MARYLAND *vs.* AMOS S. BRYANT.

*Receipt not within the meaning of the Act of 1876, ch. 262.*

A receipt was given by A. S. B. & Co., dated Nov. 2nd, 1883, in the
  following terms : " Received on storage in my canning house, from
  E. B. M. & Co., seventeen hundred and twenty cases, 3x tomatoes,
  my own packing.   Deliverable to order of E. B. M. & Co., only on
  production of this receipt, properly endorsed."   On demurrer to
  an indictment against A. S. B., for unlawfully delivering to unau-
  thorized persons the goods mentioned in said receipt, it was HELD :

That said receipt was not a *warehouse* or *storage* receipt within the
  meaning of the Act of 1876, ch. 262.

APPEAL as upon Writ of Error from the Circuit Court for Anne Arundel County.

The case is stated in the opinion of the Court. A demurrer was filed to the indictment in this case, and was sustained by the Court below; whereupon this appeal as upon writ of error was taken by the State.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, ROBINSON, and IRVING, J.

*B. Howard Haman, James M. Munroe, State's Attorney for Anne Arundel County,* and *Charles B. Roberts, Attorney-General,* for the appellant.

*S. Thomas McCullough,* and *M. Bannon,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

The Act of 1876, chap. 262, sec. 1, provides that all *bills of lading, warehouse, elevator, or storage receipts,* for goods and chattels of any kind stored or deposited, or acknowledged to be stored or deposited for any purpose in any warehouse, elevator or other place of storage or deposit in this State, "shall be and they are hereby constituted and declared to be negotiable instruments and securities, (unless it be provided in express terms to the contrary on the face thereof,) in the same sense as bills of exchange and promissory notes, and full and complete title to the property in said instruments mentioned or described, and all rights and remedies incident to such title, or arising under or derivable from the said instruments, shall enure to and be vested in each and every *bona fide* holder thereof for value, altogether unaffected. by any rights or equities whatsoever of or between the original or any other prior holders of or parties to the same, of which such *bona fide* holder for value shall not have had actual notice at the time he became such."

Sec. 6 provides that no person issuing such instruments shall part with, deliver or remove, or permit to be delivered or removed, the goods and chattels named or described in such instruments or any part thereof, except to the holder of the same, or upon his order, and upon the presentation of the receipt thus issued, etc.

The section further provides that any one violating the provisions of this Act, shall be guilty of a *misdemeanor*, etc.

The indictment charges the traverser with having wilfully and unlawfully delivered to certain persons therein named goods and chattels for which he had issued to E. B. Mallory & Co., the following receipt:

"No.        Woodwardsville, Md., Nov. 2nd, 1883.

Received on storage, in my canning house, from E. B. Mallory & Co., seventeen hundred and twenty cases 3X tomatoes, my own packing. Deliverable to order of E. B. Mallory & Co., only on production of this receipt, properly endorsed. 188—.        A. S. Bryant & Bro."

The receipt does not on its face purport to be a *warehouse* receipt, nor does the indictment charge that the parties issuing the same were engaged in the business of a warehouseman, or that they kept a place for the *storage of goods.* It is nothing more or less, than a receipt, issued by a firm engaged in the business of canning vegetables, for goods of their own canning, and which were to remain in their possession, subject to the order of Mallory & Co. And the question is whether such a receipt comes within the operation of the Act of 1876?

The language of the Act is "bills of lading," "*warehouse*," "*elevator*" *and* "*storage* receipts." These instruments were well known to commercial men, and the rights of parties well defined by law before the passage of this Act. Goods and chattels in the hands of the carrier were incapable of being actually delivered during the transit, and after they arrived at the place of delivery, it might be to

the interest and convenience of the owner, that they should be stored to await a future sale. Hence for the purpose of facilitating business transactions, the law recognized *bills of lading, warehouse, elevator* and storage receipts, as the symbols of the property represented by them, by the delivery or indorsement of which, the title to the property was transferred to the holder. They stood in the place of the property, and operated as a constructive or symbolical delivery of the property itself. They were in a certain sense *quasi negotiable,* that is to say, negotiable so far as to pass title to the transferree, but they were not negotiable in the same manner as bills of exchange and promissory notes. Accordingly in the *Balto. & Ohio R. R. Co. vs. Wilkens,* 44 *Md.*, 26, where suit was brought against the defendant corporation, on a bill of lading fraudulently issued by one of its agents, the Court said:

"The law in fact regards none of these instruments as negotiable, in the same *sense* in which a bill of exchange, or a promissory note is so. They stand in the place of the goods they represent, and delivery or endorsement of them transfers the right of property in the goods." This decision was made in the early part of the year 1876, and immediately thereafter, the Act of 1876 was passed by the Legislature, then in session.

The Act is entitled, "An Act to promote the security of commercial transactions by regulating the issue, negotiability and transfer of bills of lading, storage receipts, and like commercial instruments, by defining the rights of the holders thereof, and by preventing and punishing improper dealings with the same, or with the goods covered thereby."

The Legislature was dealing with bills of lading, storage receipts, and other like commercial instruments—instruments at that time well known to the commercial law, but which were negotiable only so far as to pass title to the property. It was such instruments as these, that the Act

declared should be negotiable " *in the same sense as bills of exchange and promissory notes,*" and that full and complete title to the property mentioned in such instruments, " should enure to and be vested in each and every *bona fide* holder."

It is clear then, both from the language of the Act itself, and the purposes for which it was passed, that the Legislature never meant to declare that a *mere receipt,* issued by one engaged in the canning business, for goods canned by him, and which were to remain in his possession, subject to the order of the purchaser, should pass title to the goods as against all other persons, and should also be negotiable in the same sense as bills of exchange and promissory notes. Nor do we see any reason either of public or private interest, why the Act should be so construed by implication. Persons engaged in the canning business have the same right to make sales of goods canned by them by delivery, or by the endorsement of bills of lading, warehouse, or storage receipts, as persons engaged in any other business. And if the Act of 1876 is to be construed as embracing receipts issued by them for goods of their own canning, and which are to remain in their possession, upon the same grounds it must be construed to extend to receipts issued by all other persons,—to the farmer, for wheat in his barn, and to the manufacturer, for goods in his factory. Such a construction, would in a measure repeal the well settled law of this State, which declares, that no sale of personal property of which the vender remains in possession, shall be valid except as between the parties, unless by a bill of sale or mortgage duly executed and recorded ; and would destroy the safeguards, which the law has wisely thrown around the sales of personal property, for the protection of purchasers and creditors. No Act ought to be construed as making so sweeping an innovation, unless the intention of the Legislature is expressed in plain and unambiguous terms. The cases

State *vs.* Bryant.

relied on by the appellant, do not support its contention. *Greenbaum Bros. & Co. vs. Megibben,* 10 *Bush, Ky.,* 419; *Cochran & Fulton vs. Ripy, Hardie & Co., &c.,* 13 *Bush,* 495; *Bradwell vs. Howard, et al.,* 77 *Ill.,* 305; *Price vs. The Wisconsin Marine and Fire Insurance Co.,* 43 *Wis.,* 267; *Merchants & Manufacturers Bank, &c. vs. Hibbard, et al.,* 48 *Mich.,* 123; *Van Schoonhoven vs. Curley, et al.,* 86 *N. Y.,* 187; *Tiedeman vs. Knox,* 53 *Md.,* 614.

The *receipts* issued in these cases, were warehouse receipts, and the Courts were dealing with the rights of parties under such receipts.

In *Cochran & Fulton vs. Ripy, Hardie & Co., &c.,* 13 *Bush, (Ky.)* 495, so strongly relied on in argument, and in which it was held that a *warehouseman* may give a receipt for his own goods stored in his warehouse, the decision was based on the provisions of the Kentucky statute. In speaking of this statute, the Court say:

" The fifth section of the Act was intended to apply to property owned by warehousemen; and expressly provides, that the merchandise, produce, &c., shall be at the time of issuing the receipt or voucher, the property without encumbrance of said warehouseman. The object of the Act was to enable warehousemen to issue receipts or vouchers for all property stored in their warehouses, whether owned by themselves or others."

The receipt set forth in this indictment, is not a *warehouse* or *storage* receipt, but one, issued by a firm engaged in the business of canning fruits and vegetables, for goods canned by them, and which were to remain in their canning house. Such a receipt is not within the terms of the Act of 1876.

*Judgment affirmed.*

(Decided 14th January, 1885.)

ALVEY, C. J., filed the following dissenting opinion:

I am constrained to dissent from the opinion of the majority of the Court in this case. In my opinion, the construction placed upon the Act of 1876, ch. 262, is wholly unwarranted by the terms of that Act.

The great object sought to be accomplished by the provisions of the statute was to enlarge commercial facilities, by imparting to certain instruments negotiable qualities, and to give ample protection to such instruments, thus clothed with their new attributes, in the hands of innocent holders for value. The Act is beneficial in its purview, and should be liberally construed to promote the objects contemplated.

Not only bills of lading, but "all warehouse, elevator, or *storage receipts whatsoever,* for goods, chattels or commodities of any kind, *stored or deposited,* or *in said receipts stated or acknowledged to be stored or deposited for any purpose,* in any warehouse, elevator, *or other place of storage or deposit in this State,*" are declared to be negotiable instruments and securities, "unless it be provided in express terms to the contrary on the face thereof," &c., sec. 1.

The storage receipt upon which the indictment in this case is founded, is as follows:

"No.          Woodwardsville, Md., Nov. 2d, 1883.

"Received on storage, in my canning house, from E. B. Mallory & Co., seventeen hundred and twenty cases: 3x tomatoes, my own packing.

"Deliverable to order of E. B. Mallory & Co., only on production of this receipt, properly endorsed,——188-.

A. S. BRYANT & BRO."

This receipt was manifestly issued with reference to the provisions of the Act of the Legislature, making such receipts negotiable; hence it was only entitled to be honored upon the endorsement by the parties to whom the receipt was given. The makers of the receipt received the goods and became bailees thereof for the owners, the holders of

the receipt, and the question of whom the goods were purchased was wholly immaterial. The receipt was negotiable by endorsement, and the holder of it could obtain money on it from the banks or bankers, or use it as a security in business transactions, upon the faith of the property represented by it, and upon the guaranty furnished by the provisions of the statute—the property remaining pledged for the redemption of the receipt. This was the facility intended to be afforded by the Act. Hence the necessity for inflicting penal consequences for removing or disposing of the goods, otherwise than in the re-demption of the receipt. It never was or could have been intended that the general provisions of the Act should only apply to elevator or warehouse receipts as such, for in regard to such receipts the property stored, according to established course of business, would never be delivered except upon the production of the receipts. It was to enlarge and legalize the use of receipts given upon the storage or deposit of goods in any place, that the statute was intended to provide. There would be no sense or meaning in the terms, "or other place of storage or deposit," if the statute had been intended only to apply to receipts of the class of elevator or warehouse receipts as such.

It was under the 6th section of the Act that the indictment in this case was framed. That section provides, that no warehouseman *or person whatsoever* having issued any receipt, acceptance of order or other voucher, for goods, &c., *as on deposit or storage with, or in the custody or on the premises, or under the control of such person,* shall issue any other receipt, acceptance of order or other voucher whatsoever for the same, or any part thereof, until the said first issued instrument shall have been returned and cancelled or destroyed; and no person whatsoever having issued, or having outstanding as aforesaid, any such receipt, acceptance of order or other voucher aforesaid, &c.,

"shall part with, deliver or remove, or permit to be de-livered or removed the goods, chattels, or commodities in such instrument named or described, or any part thereof," except, &c.; "and any person or corporation, or agent or officer of any person or corporation, wilfully violating this section, or any of the provisions thereof, shall be guilty of a misdemeanor, punishable by a fine of not less than one thousand,. nor more than five thousand dollars, in the case of a corporation, and, in the case of an individual, by a. fine of not less than one hundred, nor more than five thousand dollars, and imprisonment in the penitentiary for a period of not less than one year, nor more than three years, in the discretion of the Court."

This very stringent and severe provision of the Act with respect to the punishment of the bailee for removing or otherwise disposing of the goods in his custody or control,. with a receipt outstanding, was intended to insure good faith on the part of the bailee, and to afford security for the redemption of the receipt by the delivery of the goods. when demanded. But the provision, as will be observed, is not made any more applicable to warehousemen, pro-prietors of elevators, or other public places of storage, than to any other person who may become a bailee of goods, subject to the operation of a receipt for the same in the hands of the owner.

The receipt in this case, as we have seen, professes to be a storage receipt, and describes the goods as on de-posit or storage in the canning house of the bailee.. Why is not the canning house a proper place of storage or deposit? Why should parties be required to take their goods to an elevator or a public warehouse for storage, when they may have other fit places for the purpose, without cost or expense of any kind? The law does not profess to prescribe and regulate the places for the storage of goods, but provides simply for enabling the owner of goods to negotiate the receipt given therefor

without the manual transfer of the property. If *other places* than public warehouses and elevators may be used as places of storage, within the contemplation of the statute, (and the statute so declares,) the question is, what other places? If the terms of the statute are to have their plain meaning allowed them, I must confess to being utterly unable to see why a receipt given for goods stored or on deposit in a canning house, or in any other place selected by the parties, is not as much within the protection of the statute as a receipt given for goods stored in a public warehouse or in an elevator. It is not the nature or character of the place of storage that is material, but it is the fact of the bailment of the goods to answer the demand of the holder of the negotiable receipt given therefor, that brings the case within the operation and protection of the statute. And as to the suggestion that to hold cases like the present to be within the provisions of the Act would be in conflict with the reason and policy of the registry laws of the State, that I think is entirely without foundation. Whether the goods stored had been purchased from the traverser, or from some other person, before they were received on storage, is wholly immaterial. The goods were stated to have been received on storage from and therefore as the property of the parties to whom the receipt was given. If they had been bought of some third party and stored in the canning house of the traverser, it would in no manner make the case different from what it is. The registry laws have no application to the sale and actual delivery of the goods to the vendee; and therefore the latter may, immediately after the sale and delivery of the goods, convert the vendor into a bailee of the goods. That may have been done in this case; but it was in violation of no statute, and it in no manner affected the rights and duties of the parties to the contract.

Without expressing any opinion as to the sufficiency of the indictment in other respects, I only desire to say

that I do not, for the reasons I have stated, concur with the majority of the Court in their construction of the Act of 1876, ch. 262.