# MARYLAND REPORTS.

## THE FARMERS' PACKING COMPANY OF TAL-BOT COUNTY, MARYLAND, *vs.* ALEXANDER BROWN & SONS.

*Warehouse Receipts—Rights of Bona Fide Holder—Code, Art. 14, Sec. 1—Authority of Agents—Correction of Sealed Verdict.*

Where goods are consigned generally to a party who is clothed with the indicia of title, and the goods are by that party stored in a warehouse, the warehouseman upon the faith of such indicia of title issuing receipts, a *bona fide* assignee of such receipts is entitled to the goods, although the consignee was not the owner thereof, and was not authorized to sell the same; Code, Art. 14, sec. 1, providing that warehouse receipts shall be negotiable instruments.

Plaintiff shipped goods to L. & Co., and the carrier's shipping tickets showing that L. & Co. were the unconditional consignees. L. & Co: deposited the goods with the defendant, a warehouseman exhibiting the carrier's tickets and received warehouse receipts in L. & Co's. name. These were pledged to a third party for advances made by them to L. & Co. Plaintiff brought replevin for the goods, alleging that they had not been sold to L. & Co., but that the latter were only authorized to cause the same to be stored. Defendant pleaded property in the pledgee of the warehouse receipts. Code, Art. 14, sec. 1, provides that all warehouse receipts for goods stored shall be negotiable instruments, giving a good title to every *bona fide* holder taking same without actual notice of the equities between prior parties, and Code, Art. 2, sec. 3, provides that a person entrusted with the possession of a bill of lading shall have power to transfer the same to a person taking without notice of his want of authority. *Held,* that since the pledgee of the warehouse receipts was a *bona fide* holder of the same for value, the plaintiff was not entitled to maintain the action.

Where the question is whether certain warehouse receipts were properly issued in the name of the person to whom the goods were consigned, the freight agent of the carrier may testify as to the authority he had for the delivery of the goods to the warehouseman.

When the question is whether the act of an agent was within the scope of his authority or not, a third party may show, as against the agent's principal, that authority was expressly conferred, or that it might be inferred from the course of dealing, or that the act of the agent was subsequently ratified.

The sealed verdict of a jury, which does not show the value of the goods, in an action of replevin, as required by Code, Art. 75, sec. 111, may be corrected by the jury, before it is recorded.

Appeal from the Superior Court of Baltimore City (RITCHIE, J.)

At the trial the fourth exception was taken to the action of the Court in allowing the wharfinger of the appellee to be asked the following question: "Was or not the issuing of these warehouse receipts in the usual course of your dealings with LeRoy & Co. ?" It was previously shown that LeRoy & Co. were the agents of the appellant.

The plaintiff offered the following prayers :

*Plaintiff's First Prayer.*—If the jury shall find from the evidence that the 5,000 cases of canned corn concerned in this case were packed by and were the property of the Farmers' Packing Company, and that said company shipped said corn to Baltimore to be stored at the warehouse of the defendant, and that said corn was received in Baltimore and so stored, and that said corn was not intended by the plaintiff to be sold and was never in fact sold, then the plaintiff is entitled to recover, notwithstanding the jury may also find that the defendant issued warehouse receipts for said goods in the name of Percival LeRoy and Company, and that said Percival LeRoy subsequently assigned said warehouse receipts to the Baltimore Warehouse Company. (Rejected).

*Plaintiff's Second Prayer.*—If the jury shall find from the evidence that the goods replevied in this case were the property of the plaintiff, and were shipped by it to Balti-

more for storage in Brown's warehouse on Brown's wharf and were there stored ; and if they shall find further that said goods were not before or after that time sold by the plaintiff or by any one having authority to sell the same, then their verdict must be for the plaintiff.    Notwithstanding the fact that they shall further find that Percival LeRoy caused warehouse receipts for said goods to be issued by the defendant in the name of Percival LeRoy & Co., and subsequently fraudulently assigned said receipts to the Baltimore Warehouse Company.    (Rejected).

*Plaintiff's Third Prayer.*—If the jury find from the evidence that the goods replevied in this case were packed by and were the property of the plaintiff, and were shipped to Brown's wharf at Baltimore by said plaintiff, for the purpose of being stored in the warehouse of the defendant ; and if they shall further find that no authority was given by the plaintiff to anyone to sell said goods, and that said goods were not in point of fact sold, but were stored in the warehouse of the defendant, then their verdict must be for the plaintiff, even though they shall further find that the defendants by their agent, John R. Gould, issued without any authority from the plaintiff receipts for said goods in the name of Percival LeRoy & Co., and that said receipts were subsequently hypothecated to the Baltimore Warehouse Company ; provided that they shall further find that before the delivery of said receipts by them, the defendants made no effort or inquiries to discover to whom said goods did in point of fact belong.    (Rejected).

*Plaintiff's Fourth Prayer.*—If the jury shall find from the evidence that at the time of the issuance of the warehouse receipts given in evidence in this cause, the goods mentioned in said receipts and subsequently replevied, were the property of the plaintiff, and that said warehouse receipts were issued by the defendant in the name of Percival LeRoy & Co., without the knowledge or authority of the plaintiff, then their verdict must be for the plaintiff; unless the jury shall further find that the alleged transfer of said receipts

to the Baltimore Warehouse Company was made with the knowledge and consent of the plaintiff, or was subsequently ratified by it, or that the method of issuing said receipts was subsequently made known to and ratified by the plaintiffs previous to their alleged transfer to the Baltimore Warehouse Company. (Rejected).

*Plaintiff's Fifth Prayer.*—That the Baltimore Warehouse Company took no title by assignment from Percival LeRoy & Co., either to the warehouse receipts given in evidence in this cause, or to the goods mentioned therein and subsequently replevied, unless they, the jury, shall find that the said Baltimore Warehouse Company was a *bona fide* holder thereof for value, and had no actual notice at the time of the assignment that the goods therein mentioned did not belong to the said Percival LeRoy & Co., and could not have discovered said fact upon inquiry. (Rejected).

*Plaintiff's Sixth Prayer.*—If the jury shall find that at the time of the alleged assignment of the warehouse receipts mentioned in this cause to the Baltimore Warehouse Company by Percival LeRoy and Company, the said Baltimore Watehouse Company knew that said firm of Percival LeRoy & Co. were engaged in the brokerage business in Baltimore City—then it was the duty of said Baltimore Warehouse Company to have inquired whether the goods mentioned in said receipts were the property of said firm, and if they shall further find that said Baltimore Warehouse Company made no inquiry upon the subject, then any advances made upon said receipts were made at the risk of said Warehouse Company, and it acquired no title by reason of said advances, as against the plaintiff, and their verdict must be for the plaintiff. (Rejected).

*Plaintiff's Seventh Prayer.*—If the plaintiff was the owner of the goods replevied in this suit and it entrusted them to Percival LeRoy & Co. for the purpose of having them stored at Brown's warehouse in Baltimore, and not for the purpose of selling or otherwise disposing of them, and if said goods were actually stored upon said premises and were

taken under writ issued in this case, then the verdict must
be for the plaintiff.   (Rejected).

*Plaintiff's Eighth Prayer.*—If the jury find that at the
time of the issuance of the warehouse receipts given in evi-
dence in this cause, the goods mentioned therein were the
property of the plaintiff and that said warehouse receipts
were issued by the defendant in the name of Percival LeRoy
& Co. without the knowledge or authority of the plaintiff,
then their verdict must be for the plaintiff, unless they shall
find that the alleged transfer of said receipts was made with
the knowledge and consent of the plaintiff, or that the
method of issuing said receipts was made known to and
ratified by the plaintiff.   (Rejected).

*Plaintiff's Ninth Prayer.*—That there is no legally suffi-
cient evidence in this case to connect the plaintiff with the
receipts given by the defendant to the Maryland Steamboat
Company for the goods received at the warehouse of the
defendant.   (Rejected).

The defendant's prayer is set forth in the opinion of the
Court.

In ruling upon the prayers RITCHIE, J., said : " I can't
see any evidence of negligence or wrong upon the part of
Brown's Warehouse Company.   The carrier for the plaintiff
delivered the goods with steamboat tickets, which showed on
their face that LeRoy & Co. were the consignees of each
and every shipment, and Brown & Co. issued their ware-
house receipts in strict accordance with the face of the steam-
boat tickets which were delivered to them by the agent of
the plaintiff; and with the warehouse receipts thus procured
LeRoy gets $5,000 from the Warehouse Company.   There
is nothing upon the face of these warehouse receipts to in-
dicate anything else than that LeRoy & Co. held those
goods in their own right.   Now, then, if the plaintiff shipped
those goods to Baltimore, in accordance with the steamboat
tickets that were issued upon their arrival, then, of course,
the plaintiff could not possibly complain, that is, if the plain-
tiff consigned these goods generally to LeRoy & Co. as

ordinary consignees ; then, if LeRoy made any improper use, took any advantage of the position in which he was placed by the act of the plaintiff, the defendants acting in good faith, that is a matter between LeRoy and the plaintiff; if, however, on the other hand, the plaintiff shipped those goods by the Steamboat Company with special instructions, with instructions that LeRoy & Co. were not the consignees, but that they were to be consigned to themselves, to their own order, or with any other limitation, and the common carrier failed to observe those instructions, then the common carrier simply made a misdelivery of the goods, and in that case would be liable to the plaintiff for having delivered the goods in Baltimore contrary to instructions. The question therefore would be, on such a state of facts, a question between the plaintiff and the Steamboat Company, the common carrier, for such misdelivery of the goods. With these views, I will reject all the prayers of the plaintiff and I will grant the first prayer of the defendant ; that first prayer, I think, sufficiently and properly puts the case before the jury, and the others, I think, are not necessary ; I will therefore reject the other prayers of the defendant."

The cause was submitted to the jury with leave to bring in a sealed verdict. They delivered a signed and sealed verdict to their foreman and then separated. On the assembling of the Court the next morning, the jury being placed in the box, their sealed verdict was then handed to the Court by their foreman ; said verdict being in the words following :

" We, the undersigned, jurors duly impanneled and sworn to try the issues joined in the above-entitled case, upon our oaths before separating, do say, that we find our verdict for the defendants in the sum of six thousand dollars ($6,000), and damages at one cent. And do authorize and direct our foreman to deliver this, our signed and sealed verdict, to the Court."

After the Court had looked over the sealed verdict and conferred with the Clerk as to its form, the Clerk, under the instructions of the Court, took the verdict in the follow-

ing manner, viz : (the Court not having required the jury to retire to their room). "Gentlemen of the jury, by your sealed verdict you say you find for the defendant."

To which the foreman assented.

" At what do you assess the damages ?"

The foreman answered " one cent."

" What do you find to be the value of the goods ?"

The foreman answered " $6,000."

The Clerk then recorded the verdict as thus given and then said :

" Gentlemen of the jury, hearken unto your verdict as the Court hath recorded it : Your foreman says that you find for the defendant and that you assess the damages at one cent, and that you find the value of the goods to be $6,000, and so you all say now ?"   To which the jury assented.

The Court then informed the counsel in the case of the form of the sealed verdict, but there was no assent or waiver of any right on the part of plaintiff.

The verdict recorded is as follows :

" November 24, 1896.   Verdict for defendants, and the jury value the property replevied at $6,000, and assess the damages at one cent (1 c.)"

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and RUSSUM, JJ. (October 8, 1897).

*Thos. Ireland Elliott* and *Frederick T. Dorton*, for the appellant.

The theory of the plaintiff's prayers was that if the jury should find from the evidence that the goods replevied belonged to the plaintiff, and had been shipped to Baltimore for the purpose of being stored here and not for sale, so that nobody was authorized to sell or dispose of them, and if the appellees either knew or could have discovered by reasonable inquiry that Percival LeRoy & Co. were brokers,

and that they did not own the goods in question, then there was no authority to them, the appellees, to issue negotiable warehouse receipts in the name of Percival LeRoy & Co., and that the fact that such negotiable warehouse receipts were issued, and subsequently got into the hands of the Baltimore Warehouse Company, even if in good faith and for value, did not deprive the plaintiff of the right to repossess itself of its own goods, because the Act of 1876, chapter 262, does not protect the holder of warehouse receipts given for goods which have been stolen.    The plaintiff's case proceeded upon the further theory that even if the appellees (Alexander Brown & Sons) had been justified in originally issuing the warehouse receipts in the name of Percival LeRoy & Co. and in making them negotiable, still the plaintiff has a right to replevy the goods, especially in view of the fact that the appellees claimed no property in them whatever, and the practical effort to defeat the plaintiff was rested upon the alleged pledging of those warehouse receipts to the Baltimore Warehouse Company.    Our theory was and is that if, when Percival LeRoy fraudulently pledged those warehouse receipts to the Baltimore Warehouse Company, its president, Colin A. Foote, had reason to suspect that the goods did not belong to Percival LeRoy & Co., no pledging of those warehouse receipts could pass any title to the pledgee.    On the subject of such notice the testimony of William H. Earp is conclusive, and it was not contradicted.    The theory of the appellees and of the lower Court seemed to be that the possession of the warehouse receipts in the name of Percival LeRoy & Co. was conclusive proof of their ownership, in spite of any and all reasonable cause which anybody, and particularly the Baltimore Warehouse Company, might have had to suspect the fact of such ownership.    The Court is respectfully referred to the following cases : *Dillon* v. *Insurance Company,* 44 Md. 386 ; *Levi* v. *Booth,* 58 Md. 305 ; *Ruhl* v. *Corner,* 63 Md. 179, 187 ; *Seal, &c.,* v. *Zell & Sons,* 63 Md. 360 ; *Jacob Dold Packing Co.* v. *G. Ober & Sons Co.,* 71 Md. 155 ; *Taliaferro* v. *Bank,*

71 Md. 208 ; *Allen* v. *Bank*, 120 U. S. 32 ; *Warner* v. *Martin*, 11 How. 209 ; *Thurber* v. *Cecil National Bank*, 52 Fed. Rep. 518 ; 100 Mass. 390 ; *Mercantile Bank* v. *Livingston*, 74 N. Y. 223 ; *Collins* v. *Ralli*, 20 Hun. 246 ; 1 *Abb. Ct. App.* 86 ; *Burton* v. *Curyea*, 40 Ill. 320 ; *1st National Bank* v. *Nelson*, 38 Ga. 391 ; *Story on Agency*, sec. 78 ; *Vol. 28, American and English Enc.* note, page 382 ; 89 *Am. Dec.* 350.

The sixth exception was as to the manner of taking the sealed verdict. There was no evidence in the case to show the value of the goods. The appraisement was not given in evidence and the sealed verdict as rendered shows that conclusively, because the jury made no attempt to find the value of the goods until the Clerk, under the instruction of the Court, took the verdict in the manner recited in the record. The verdict was not such as to support the judgment rendered in the case. *Gaither* v. *Wilmer, Trustee*, 71 Md. 361; *Redenour* v. *Beatman*, 68 Ind. 236; *Handfor* v. *Obrecht*, 49 Ill. 147 ; *Smith* v. *Houston*, 25 Ark. 183 ; 28 Mo. 360 ; 7 Mo. App. 66 ; 10 Hun. 212 ; 75 Ala. 505.

*Stewart Brown (of Brown & Brune)*, with whom was *George R. Willis* on the brief, for the appellees.

BRISCOE, J., delivered the opinion of the Court.

This is an action of replevin brought by the appellants, the Farmers' Packing Company of Talbot County, against the appellees, Alexander Brown and Sons, to recover five thousand cases of canned corn, alleged to be the property of the appellants. The defendants pleaded property in themselves and property in the Baltimore Warehouse Company. To these pleas a replication was filed and upon issue joined the case was tried, which resulted in a verdict for the defendants. At the trial there were eight exceptions reserved, and these form the basis of this appeal. We will pass upon them in their regular order, in so far as it may be necessary to the determination of this case.

The plaintiff is a corporation, engaged among other things, at Easton, Talbot County, in canning and packing corn. The defendants are general agents and engaged in the warehouse business at Brown's wharf, Baltimore. It appears from the record that the appellant during the month of September, 1894, shipped by steamboat to Baltimore five thousand cases of canned corn. When this corn reached Baltimore, Percival LeRoy & Co., who were dealers in canned goods and supplies, were notified by a shipping ticket from the Steamboat Company of its arrival. This ticket showed upon its face that LeRoy & Co. were the consignees of the corn. It was then taken to Brown's warehouse for storage, and upon the faith of the tickets issued by the carrier, the Steamboat Company, the receipts of the Warehouse Company were issued in the name of Percival LeRoy & Co. And on the 29th of September, 1894, LeRoy & Co., the consignees, obtained from the Baltimore Warehouse Company a loan of $5,000 upon these warehouse receipts which had been previously issued in their name, and which were in their possession. The property now in dispute was replevied by the appellants on the 31st of October, 1894, and the judgment below being for the defendants, the plaintiff has appealed.

Now it is clear that since the Act of 1876, chapter 262 (Code, Art. 14, sec. 1), all warehouse, elevator or storage receipts whatsoever for goods, chattels or commodities of any kind stored or deposited in any warehouse are declared to be negotiable instruments and securities, unless it be provided in express terms to the contrary on the face thereof, in the same sense as bills of exchange and promissory notes, and full and complete title to the property mentioned therein shall vest in each and every *bona fide* holder thereof for value, altogether unaffected by any rights or equities whatsoever between the original or any other prior holders of which such *bona fide* holder for value shall not have had actual notice at the time he became such. And by section 3 of Art. 2, it is provided that any person *intrusted with*

and in possession of any bill of lading, storekeeper's or inspector's certificate, order for the delivery of goods, or other document showing possession, shall be deemed the true owner of the goods, wares or merchandise described therein, so far as to give validity to any contract thereafter to be made by such person, with any other person or body corporate for the sale or disposal of the said goods, or for the pledge or deposit thereof as a security for any money or negotiable instrument advanced or given on the faith of such documents, provided that such person or body corporate shall not have notice by such document or otherwise, that the person so intrusted is not the actual and *bona fide* owner of such goods, wares and merchandise. These statutes have been recently before this Court and received its construction. *Tiedeman* v. *Knox*, 53 Md. 620; *Ruhl* v. *Corner*, 63 Md. 182; *Seal* v. *Zell*, 63 Md. 356. Looking then to the law as settled by the decisions of this Court, and as applicable to the facts and circumstances of this case, we are of opinion that it was correctly stated in the defendant's instruction, which was granted by the Court.

" The defendants pray the Court to instruct the jury that if they find from the evidence that the Farmers' Packing Company, the plaintiff, during the month of September, 1894, shipped from Easton, consigned to Percival LeRoy and Company, in Baltimore, the 5,000 cases of canned corn which were afterwards replevied in this suit. And if the jury find that the said goods were shipped in various lots, and received from the 15th to the 28th of September, inclusive, and that said goods reached Baltimore by water, and that on the arrival of each shipment at the wharf of the respective steamers transporting the same, the said respective shipments were by direction of Percival LeRoy and Company, the consignees, transported for delivery to Brown's wharf, and that on each delivery of said shipments of canned goods a receipt prepared in duplicate by the Steamboat Company delivering the same, for the goods so delivered, indicating thereon that Percival LeRoy and Company

were the consignees of said goods, was presented to the wharfinger of defendants to be signed on behalf of Percival LeRoy & Co., the consignees ; and if the jury further find that said goods were so received and receipted for and by direction of Percival LeRoy and Compay were stored in Brown's warehouse, and that the warehouse receipts offered in evidence were issued for said goods to Percival LeRoy & Co., by defendant's warehouseman, on the faith of said shipment receipts, and without any notice to him or to the defendants from said shipment receipts or otherwise that Percival LeRoy & Co. were not the actual and *bona fide* owners of the goods mentioned therein respectively ; and if the jury further find that thereafter the Baltimore Warehouse Company, upon presentation and endorsement to it, of the said warehouse receipts by Percival LeRoy & Co., in good faith, and without notice that Percival LeRoy & Co. were not the actual and *bona fide* owners of the goods specified therein respectively, advanced to the said Percival LeRoy & Co., on the faith of said warehouse receipts and of the goods specified therein, the sum of $5,000 ; and if they further find that the said advance is still due and unpaid, then the verdict of the jury must be for the defendants on the issue of property in the Baltimore Warehouse Company.''

It follows then from this view of the law that there was no error in the refusal of the appellant's prayers, because they proceeded upon an entirely different view of the law, and were not supported by the facts of the case. They were also unnecessary and calculated to mislead the jury, as the law of the case had been accurately submitted by the appellee's prayer.

There were four exceptions taken at the trial on the part of the appellants to the admission of evidence. We have carefully examined these exceptions and discover no error of which the appellants have a right to complain. As to the first exception, it is only necessary to say that it does not appear from the bill of exception that the evidence ob-

jected to was submitted to the jury. The witness, Brainard, who was freight agent of the common carrier, in answer to the question allowed by the Court, seems only to have testified as to the usual course of business of his company in reference to the receiving, carrying and delivery of freight. There was no error in the admission of this evidence. The second exception was to the allowing of the following question to be asked the witness, Brainard: "In reference to the goods, what directions did you receive from LeRoy," the answer being "Well, in all cases of the Farmers' Packing Company, take them to Brown's wharf." This testimony, we think, was material and relevant, for the purpose of showing under what authority the canned corn had been delivered by the Steamboat Company to Brown's wharf, thus showing the possession of the goods by the appellees.

The third and fourth exceptions will be considered together; the first is an exception to the admission in evidence of the warehouse receipts issued by the appellees in the name of Percival LeRoy & Co., and the second to the admission of testimony as to the usual course of business between the appellees and Percival LeRoy & Co., the consignees. The warehouse receipts were clearly admissible under the plea of property in the Baltimore Warehouse Company. These receipts were in the possession of C. A. Foote, the president of the company, who testified that they were for the corn replevied in this case. The testimony objected to in the fourth bill of exception was admissible under the rulings of this Court in the cases of *Busby* v. *The North American Life Insurance Company*, 40 Md. 572; *Levi* v. *Booth*, 58 Md. 312.

The remaining exception relates to the manner of taking the sealed verdict. It is objected that the sealed verdict as found by the jury did not ascertain separately the value of the goods and the damages as required by section 111 of Article 75 of the Code. But assuming this to be true, it further appears that the verdict was properly corrected by the jury before its record, so when delivered by the jury and

recorded by the Court it fully complied with the statute. A verdict can be varied from by the jury at any time before it is recorded. *Edelin* v. *Thompson*, 2 H. & G. 31; *Gaither* v. *Wilmer*, 71 Md. 365.

Finding no error the judgment will be affirmed with costs.

*Judgment affirmed with costs.*

(Decided January 4th, 1898)