# THE WASHINGTON COUNTY NAT. BANK OF WILLIAMSPORT *vs.* J. L. MOTTER et al., Receivers.

*Warehouse Receipts For Goods Issued by a Company Not Carrying on a Warehouse Business.*

The Undine Milling Company was incorporated for the purpose of manufacturing flour, etc., and for the purchase, sale and storage of grain. The company did not have a storage warehouse other than the elevator connected with the mill.   All the wheat in the elevator was intended to be made into flour and none of it was ever delivered to the parties leaving it there or to third persons.   Sometimes the wheat brought to the elevator was priced up immediately and sometimes that was done at a future time—the latter being called "stored" wheat, but this was mingled with the other wheat and subsequently manufactured.    The Milling Co. borrowed money from a bank and gave as collateral security receipts stating that the company had received in store from the bank a certain number of bushels of wheat, subject to the order of the bank and to be delivered upon the surrender of the receipts.   Upon the failure of the Milling Co., the bank contended that it was entitled to priority over the creditors because these receipts were warehouse receipts within the purview of Code, Art. 14, sec. 1, which provides that all warehouse, elevator or storage receipts for goods stored, &c., shall be negotiable instruments, &c., and full and complete title to the property in the instru-

ments mentioned shall enure to, and be vested in, each and every *bona fide* holder thereof for value. *Held*, that the Milling Co. was not a warehouseman within the meaning of this statute so as to make valid, as against other creditors, these receipts issued by it on its own wheat and as security for its own debts.

Appeal from the Circuit Court for Washington County (BOYD, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE and SCHMUCKER, JJ.

*John V. L. Findlay* and *J. Clarence Lane* (with whom was *Henry H. Keedy, Jr.*, on the brief), for the appellant.

*Alexander Neill* and *Edward I. Koontz* (with whom was *J. Augustine Mason* on the brief), for the appellees.

BRISCOE, J., delivered the opinion of the Court.

The questions in this case arise upon certain exceptions to an audit distributing the assets of the Undine Milling Company of Carroll County, an insolvent corporation, among its creditors now in the hands of its receivers in the Circuit Court for Washington County.

The real contention in the case is between the holders of what are termed warehouse or storage receipts and the receivers, representing the general creditors of the company.

The appellant, the Washington County National Bank of Williamsport, contends that as the holder of eighteen warehouse receipts, for five hundred bushels of wheat each, it is entitled to a preference over the general creditors, under sec. 1 of Art. 14 of the Code, which provides that all warehouse, elevator or storage receipts whatsoever for goods, chattels, &c., &c., of any kind stored or deposited, &c., &c., for any purpose in any warehouse, elevator, &c., &c., shall be and are hereby constituted and declared to be negotiable instruments and securities unless it be provided in express terms to the contrary on the face thereof, in the same sense as bills of exchange and promissory notes, and full and complete title to the property

in the instruments, &c., &c., shall enure to and be vested in each and every *bona fide* holder thereof for value.

The appellees on the other hand contend that the Milling Company was not a warehouseman within the meaning of Art 14 of the Code, and consequently the receipts issued by it to the appellant and others are not valid and legal receipts, so as to give the bank priority as claimed.

The facts appear from the record to be as follows: The Undine Milling Company of Carroll County was incorporated on the 31st day of May, 1895, under the general laws of the State, for the purpose of manufacturing flour and feed, and doing a general milling business and for the sale of the products thereof, and for the purchase, sale and storage of all kinds of grain.

Sometime prior to 1900 this company had been engaged in the milling business at Williamsport, in Washington County, where its principal place of business was located. Prior to the appointment of the receivers, and at different times during the year 1899, the company borrowed from the appellant bank the sum of $5,400 on eighteen notes of $300 each and gave as collateral security for each of them a receipt which is in form as follows:

> Williamsport, Md., Apl. 4, 1899.

Received in store from Wash. Co. Natl. Bank five hundred bushels of prime milling wheat subject only to the order hereon of Wash. Co. Natl. Bank, and only to be delivered upon the surrender of this receipt.

Certified to by                    Undine Milling Company.

J. W. Crow, Weigher.              *per* F. H. Darby, Pres.

At the time of the failure of the company there were about 9,185 bushels of wheat in its elevator. These were subsequently sold and the proceeds of sale were distributed to all of the creditors, whose claims amounted to the sum of $33,336.48, without allowing any priority to the claim of the bank under the receipts.

The controlling question, then, is, whether the Undine Milling Company was a warehouseman as claimed by the appellant, and if so, was it authorized to issue the receipts here in controversy.

Now while it is true, as will be seen, that under its charter this company was authorized to engage in the storage of all kinds of grain, yet as a matter of fact, and according to the evidence in the case, it was at the time the so-called storage receipts were issued simply conducting a general milling business, and did not keep a place for the storage of wheat to be returned to those leaving it or to be delivered to others. It was engaged in the business of manufacturing flour, and the wheat was bought by the company and stored in its elevator to be used for this purpose. The witness Dellinger, testified that the only difference between what is called "bought" and the "stored" wheat, was, that one was priced up immediately and the other was priced up at some future time; that the stored wheat was never withdrawn or taken away by the farmers; it was not kept separate from the bought wheat, but was used by the company whenever needed in the mill for manufacturing flour.

It is admitted in the case that the bank did not deliver any wheat to the company, and the testimony shows that the bank officers had full knowledge that the company was using the wheat in the manufacture of flour.

Under this state of facts, we do not see upon what theory it can be successfully argued that the Milling Company in this case was a warehouseman and doing a storage business within the terms and meaning of Art. 14 of the Code, so as to make valid and give legal effect to the receipts issued by it to the bank as against other creditors. In the case of *State v. Bryant*, 63 Md. 70, this Court in dealing with a somewhat similar receipt said: "The Legislature never meant to declare that a *mere receipt*, issued by one engaged in the canning business, for goods canned by him, and which were to remain in his possession, subject to the order of the purchaser, should pass title to the goods as against all other persons, and should also be negotiable in the same sense as bills of exchange and promissory notes. Nor do we see any reason either of public or private interest, why the Act should be so construed by implication. Persons engaged in the canning business have the

same right to make sales of goods canned by them by delivery, or by the endorsement of bills of lading, warehouse, or storage receipts, as persons engaged in any other business. And if the Act of 1876 is to be construed as embracing receipts issued by them for goods of their own canning, and which are to remain in their possession, upon the same grounds it must be construed to extend to receipts issued by all other persons, to the farmer, for wheat in his barn, and to the manufacturer, for goods in his factory.   Such a construction, would in a measure repeal the well settled law of this State, which declares, that no sale of personal property of which the vendor remains in possession, shall be valid except as between the parties, unless by a bill of sale or mortgage duly executed and recorded; and would destroy the safeguards, which the law has wisely thrown around the sales of personal property, for the protection of purchasers and creditors.   No Act ought to be construed as making so sweeping an innovation, unless the intention of the Legislature is expressed in plain and unambiguous terms."

It is clear, we think, that as the receipts issued in this case, were not warehouse, elevator or storage receipts, within the terms of the Act, here relied upon, that the appellant was not entitled to any priority or preference in the distribution of the fund, and the Circuit Court for Washington County was right in so declaring.

The case of *Farmers' Packing Company* v. *Brown*, 87 Md. 1, is clearly distinguishable from this.

For the reasons we have given, the decree of the Circuit Court for Washington County, appealed against, will be affirmed.

*Decree affirmed with costs.*

(Decided June 30th, 1903.)