# Nabring v. Bank of Mobile.

*Trover for Conversion of Stock transferred as Collateral for Debt.*

1. *Execution; upon what can not be levied.*—An execution can not be levied on shares of stock of an incorporated company, which have been pledged or mortgaged by the defendant in execution, as security for a debt, and transferred on the books of the company to the pledgee or mortgagee; and a purchaser at sheriff's sale, under such levy, acquires no title to the shares.

2. *Pledge of stock; when pledgee has no authority to sell.*—Where a stockholder of an incorporated company, borrows money, and as security causes his shares to be transferred to the lender on the book of the company (R. C. § 1783-8), the transaction is a pledge, and not a mortgage, and the lender has no right to sell or transfer the shares to another, without demanding payment of the debtor, or giving him notice of the intention to sell; nor can the lender sell at private sale for less than the market value of the shares.

3. *Same; conversion of shares; when pledgee may recoup debt, etc.*—Trover lies for the conversion of shares in an incorporated company; and the pledgee, when sued for such conversion, may recoup his debt from the pledger.

4. *Trover for conversion of stock; what title will not support.*—Although a stockholder, whose shares have been duly transferred on the books of the company, as security for a debt, may not have such legal title as will enable him to maintain trover against the pledgee, for an unauthorized sale, he may maintain a special action on the case; and a count in case may be added to the complaint in trover by amendment.

APPEAL from the Circuit Court of Mobile.

Tried before Hon. JOHN ELLIOTT.

Nabring, the appellant, borrowed of appellee, the bank of Mobile, in 1867, $3,000; and, to secure the repayment, he caused to be transferred to the bank thirty-four shares of the capital stock of the Royal Street Railroad Company of that city, on the books of the company. Afterwards he increased the security by a mortgage of some real estate. These thirty-four shares, by the investment of dividends, were increased to fifty-six, which, at the time of the sheriff's sale hereinafter mentioned, were worth $5,600. From the date of the transfer to the sheriff's sale, "said bank of Mobile was considered by said railroad company as the sole owner of said stock; and they knew and recognized said bank, and no other person whatever, as the owner thereof, and the same stood on the books of said corporation as the property of the defendant"—the bank.

In 1872, the sheriff of Mobile county, having in his hands writs of execution in favor of certain judgment-creditors of Nabring, against him, and being informed that the president of the railroad company had, in answer to a deputy sheriff, informed him that Nabring did not have a dollar's worth of stock in that company, and had not owned any stock therein in three or four years, indorsed on said executions that, on the 2d day of February, 1872, he levied them on certain real estate in the city of Mobile, described in this endorsement. It is the same that had been mortgaged to the bank. Then follows this entry, as a continuation of the indorsement: "Also, on the same day, I levied on fifty-six shares of the Royal Street Railroad stock, and I advertised in the Republican, a newspaper printed in the city of Mobile, the above described property for sale on the first Monday of March, 1872, and before the hours of sale, I was directed by the plaintiff's attorneys to postpone said sale until the first

[Nabring v. Bank of Mobile.]

Monday of April, 1872, on which day I sold, in front of the court-house of Mobile, all the above described estate, to John R. Tompkins, for the sum of ten dollars; also, on the same day, and at the same time and place, I sold said Royal Street Railroad stock to the said Jno. R. Tompkins for the sum of ten dollars. I will, further, return that immediately before the sale of all the above described property, I announced that the bank of Mobile held a mortgage on said real estate, and thirty-six shares of the Royal Street Railroad stock, for the sum of —— dollars." At the foot of the endorsement, it is dated June 28, 1872, and then signed by the sheriff.

According to the record, "Tompkins went at once to the cashier of the bank of Mobile, and paid off the debt due to it by Nabring; and the bank, without notifying Nabring, assigned and transferred said note and mortgage" [note for the money borrowed and mortgage of the real estate] "to said Tompkins, . . . and also delivered up to said Tompkins said fifty-six shares of Royal Street Railroad stock, and transferred the same to him on the books of said company, and most of which he sold, a few days after said transfer, at $100 per share." At the time of the sheriff's sale, Nabring's debt to the Bank amounted to $4,234. He brought an action of trover, claiming $2,000 as damages, against the bank for conversion of the railroad shares.

The circuit judge charged that the levy and sale were conclusive as to plaintiff, and transferred his interest to Tompkins, who had a right then, by paying plaintiff's debt to the bank, to redeem the shares and have them transferred to himself,—and the bank was, therefore, not liable in this action for so transferring them. The circuit judge charged, further, that plaintiff, Nabring, ought to go into a court of chancery for his remedy, and could not recover in this action; that the levy and sale were valid, and plaintiff could not recover. "To which general charges, and to each and every part of the same, the plaintiff excepted" and took a non-suit, with a bill of exceptions, for a revision of the rulings, according to the statute.

D. P. BESTOR, for appellant.

WM. G. JONES, contra.

MANNING, J.—The first question in this case is, whether or not there was a valid levy and sale of the shares of stock?

By section 2871 of the Revised Code, it is enacted, "Executions may be levied—1. On real property," etc.: "2. On

[Nabring v. Bank of Mobile.]

personal property of the defendant *(except things in action)*, whether he has the absolute title thereto, or the right only to the possession thereof, for his own life, or the life of another, or for a shorter period. But this does not apply to a possession acquired by a *bona fide* hiring of chattels: 3. On an equity of redemption in either land or personal property. When any interest less than the absolute title is sold, the purchaser is subrogated to all the rights of the defendant, and subject to all his disabilities." The exception in the second clause of "things in action," from personal property that may be levied on, extends, of course, to the personal property, in which an equity of redemption may be sold. For, if things in action, of which the defendant is absolute owner, may not be levied on and sold under an execution, certainly things in action, in which he has only an equitable or defeasible contingent interest, cannot be. The shares of stock, for the conversion of which this suit was brought, were "things in action." They, therefore, were not made liable to execution in any manner by these statutory provisions. And, as they were not so liable by the common law, it depends entirely upon sections 1783 *et seq.* of the Revised Code, whether or not the sheriff had any legal authority to sell them at all.

Section 1783 declares that "the shares or interest of any person, in any incorporated company, are personal property *and transferable on the books* of the company, . . . and such shares or interest may be levied on by attachment or execution, and sold as goods and chattels, and the purchaser shall be the owner of the share, or shares, or interest bought by him, and the officer making the sale shall transfer the same to the purchaser in writing, which *shall be registered on the books* of the company. The levy made may be made with or without the officer's having possession of the certificate, or other evidence of the ownership of the stock or interest, by endorsing the levy on the attachment or execution, stating the number of shares, or other interest levied on.—§ 1784. The *custodian of the books* of the company must give to the officer having such writ, upon its being exhibited to him, a statement, signed by him in his official capacity, of the number of shares or amount of interest held by the defendant in the company." And for his neglect or refusal to do so, the custodian of the books is subject to a fine. To the end that the ownership may appear by the books, on which it is previously declared the shares are to be transferable, section 1786 enacts: "When any incorporated company does not by its charter, by-laws, or otherwise, require the transfer of its stock to be *made or registered on the books* of the company,

[Nabring v. Bank of Mobile.]

such company must forthwith make such provision." Section 1788 provides that "no lien shall be created against the stock" of any stockholder against whom the sheriff has an attachment or execution, "until the plaintiff, his agent, attorney or sheriff in whose hands such execution or attachment shall be placed, gives notice to the secretary, cashier or other officer of such corporation, *who has custody of the books*, that such execution or attachment has been issued and the name of the defendant therein; and all transfers duly made before such notice is given, shall be as valid as if the levy had not been made." Of course, the levy would not be perfect until the lien was thus created.

These enactments are in derogation or change of the common law, and it is to be observed that while they provide that the shares of any person in an incorporated company, "may be levied on by attachment or execution, and sold as goods and chattels,"—that is, upon such advertisement and in the manner goods and chattels must be sold under execution,—they do not declare that an equity of redemption, or other interest less than that of an absolute owner, in such shares, may be levied on and sold. And the provisions so carefully made, to have the ownership of the shares appear by and made transferable upon the books of the corporation, show a purpose, since the shares which the sheriff is to sell, are not visible and tangible, and therefore not capable of manual caption and delivery,—to make the right to them as unembarrassed and absolute as possible. In making a levy of goods and chattels, a sheriff must find and take possession of and on the day and place of sale produce them, so that they may be seen and examined by bidders. This he can not do with the shares of stock in a corporation—mere choses in action. The nearest approach to finding and obtaining possession of such things, and the only mode of conveying them, is to find whose name stands as that of the owner of them upon the books of the corporation,—and by giving notice that they are levied on as the property of such person and exhibiting the execution against him to the custodian of the books, to hold them from transfer to any body else until the sheriff's sale, and then to have the sheriff's certificate of the sale registered on the books, as evidence of the transfer of the shares to the purchaser from him. The transfer of the stock on the books, "is equivalent to actual possession, because it is . . the means of obtaining possession . . The capital stock of a corporate company, is not capable of manual delivery. The scrip or certificate may be delivered, but that of itself does not carry with it the stockholder's interest in the corporate funds. . . . It may be that

nothing short of the transfer of the title on the books of the company would be sufficient to give the absolute possession of the stock and to secure it against a transfer to some other person."—(*Wilson v. Little*, 2 N. Y. 447.) This certainly is true in regard to the stock which is the cause of this controversy. And the statutes cited, recognizing the difficulties of the subject, have prescribed the process above set forth as the only one by which a sheriff's sale can be made of such things as shares of the capital stock of a corporation, in such a manner as to afford intelligible information of what it is that he offers for sale, how the bidder, if he buys it, shall obtain possession, and how he may find out what the thing sold is probably worth. Sheriff's sales would be terrible scourges, indeed, if not so conducted as that these things may be ascertained with some degree of certainty.

Now, it is clear, that the process of sale prescribed by the statute, is not applicable to shares of stock situated like those now in controversy. Whether they were merely pledged to the bank as security for Nabring's debt to it,— leaving in him a legal right to the restoration of them on payment of the debt, or were mortgaged to the bank, leaving in Nabring an equity to redeem them, in either case they could not be reached in the method of proceeding which the sheriff must pursue in order to make the levy and sale effectual. And from this it follows, that as at common law, goods and chattels that were pledged and in possession of the pledgee, or that were mortgaged and in possession of the mortgagee, were not subject to levy and sale under execution— so shares of the capital stock of incorporated companies, pledged or mortgaged and so situated, are not made liable by statute, to execution sale. An execution creditor, in such a case, must proceed in some other manner, as by a bill in equity, to make the interest of the defendant in stock so situated available for the payment of the debt. We might enforce these views by showing how impracticable it would be to carry out the statutes upon a different interpretation of them. The endeavor to do so would produce great embarrassment and injury, if not insurmountable difficulties. In practice, besides, the interpretation contended for would offer opportunities and temptation to dishonest speculation, ruinous to parties to executions. But it is sufficient to say, that the shares in question were not subject to levy and sale under the executions against Nabring, and that Tompkins took no title by the supposed sale to him, and did not succeed to the rights of Nabring in the stock. It follows that the circuit judge erred in his charge of the contrary.

The cause has been argued as if the case were that of a

(14)

mortgage. We think the bank was pledgee, not mortgagee, of these shares. They were put in pledge to it for the payment of the money Nabring borrowed; and there remained in Nabring a legal right to demand and have them upon payment of the debt. The reasons for so ruling are presented in a very satisfactory manner by RUGGLES, J., of the Court of Appeals of New York, in *Wilson v. Little, supra,* a case almost exactly like the present, after thorough argument and consideration.—2 N. Y. (2 Coms.) 443; Story on Bailments, § 290.

As pledgee the bank had no right to sell the shares without first demanding payment of the debt from Nabring, or giving him notice of the intention to sell. And, of course, it could not sell the stock at private sale, for less than its current market price; which is shown to have been $100 a share. From Tompkins it took less than this, only the amount of Nabring's debt to it. And the bank must be responsible to Nabring for the difference between that amount and the market value of the stock; which difference Nabring, after the sale, demanded of it. A pledgee may recoup the debt of defendant to him, when sued by the pledgor for conversion of the things put in pledge.—*Stearns v. Marsh,* 4 Denio, 227.

On behalf of the appellee, it is contended that, even if the court erred, it was error without injury, for the reason, as counsel insist, that plaintiff was not entitled to recover by this action of *trover :* 1st, because it will not lie for the conversion of any other than tangible corporeal chattels; and, 2dly, because the legal title which a plaintiff in that action must have, was not in him, it having been conveyed to the bank. The first of these reasons is not sound, according to cases in this and other courts.—See *St. John, survivor, v. O'Connel,* 7 Port. 466. Upon the second reason, we are inclined to agree with counsel for the appellee. But it is not necessary for us to decide the question. It was not raised in the court below,—and if it had been, an amendment would have been allowable by adding a count in case for the same cause of action. A special action on the case would certainly have been sustainable upon such a cause of action; and a count in case may be joined with one in *trover.* The circuit judge erred in holding that plaintiff must go into chancery for redress. We find it unnecessary to consider the case in another aspect, as was intended.

The judgment must be reversed and the cause remanded.