(85 South. 779)

## ODEN v. VAUGHN. (8 Div. 234.)

(Supreme Court of Alabama. May 13, 1920. On Rehearing, June 30, 1920.)

1. **Specific performance** ⊕=70—Court of equity will compel transfer of stock on books.

Regardless of whether the transaction by which complainant acquired title to corporate stock was through mortgage or pledge, a court of equity will compel a transfer on the books, giving relief on the theory of specific performance; the law not affording an adequate remedy.

2. **Mandamus** ⊕=126—Mandamus not adequate remedy to compel transfer of corporate stock.

Mandamus to compel the transfer of corporate stock on the books of a corporation does

not afford adequate remedy so as to deprive equity of jurisdiction.

**3. Corporations ⊚➡127—Equity may compel cancellation of old stock certificate and issuance of new in lieu thereof.**

A court of equity has jurisdiction to compel the cancellation of old stock and the issuance of new stock in lieu thereof.

**4. Equity ⊚➡420—On decree pro confesso, averments of bill are not admitted as against administratrix.**

Under the direct provisions of Code 1907, § 3163, the allegations of a bill against an administratrix are not, though a decree pro confesso was lawfully taken, to be accepted as admitted against the defendant in a representative capacity, and so a final decree unsupported by evidence and based merely on the admission cannot be upheld.

**5. Appeal and error ⊚➡721(1)—Assignment of error by administratrix in individual capacity held sufficient.**

Where suit to compel transfer of corporate stock was brought against decedent's widow, both as administratrix and in her individual capacity, an assignment of error conforming with rule 1, Supreme Court Practice (Code 1907, p. 1506) by the widow as an individual complaining of the rendition of a decree unsupported by evidence, and based on the averments of the bill which were improperly taken as admitted against her, as administratrix, on entry of a decree pro confesso, is sufficient; the widow, as an individual, being injured by the decree against the estate, and both the bill and a cross-bill filed by another party defendant showing that the widow had an interest in the corporate stock standing in the name of decedent.

**6. Appeal and error ⊚➡1172(1)—Decree not subject to reversal in part.**

Where the bill seeking the transfer of corporate stock on the books of corporation which made the administratrix of deceased holder a party, both in her representative and individual capacity, showed that she had an interest in the stock, as did the cross-bill of the corporation, a decree entered without proof on decree pro confesso could not be affirmed in part and in part reversed or remanded, where attacked by the administratrix in her individual capacity.

On Rehearing.

**7. Chattel mortgages ⊚➡8—"Chattel mortgage" and "pledge" distinguished.**

A "pledge" differs from a "chattel mortgage" in that it may be constituted without any contract in writing, merely by delivery, and is continued so long as the possession of the thing pledged remains with the creditor, and it does not pass title to the thing pledged but gives merely a lien, while a "chattel mortgage" is a conveyance of the title on condition, and may be valid without delivery; a mortgage being a pledge and more, and the title being conveyed subject to be divested, if the condition of the mortgage is performed (citing Words and Phrases, Chattel Mortgage; Pledge).

**8. Chattel mortgages ⊚➡8—"Pledge" and "chattel mortgage" distinguished.**

A written transfer of the legal title to property as security for a debt under such circumstances as to show that the parties intended a sale, whether with or without delivery, constitutes a "chattel mortgage," though no method of foreclosure is provided, while, if possession of the property is delivered, legal title remaining in the debtor and the creditor having a mere lien, the transaction is a "pledge."

**9. Chattel mortgages ⊚➡6—If sale for security, instrument is chattel mortgage.**

Where the nature of the transaction is doubtful, but the words are sufficient to show a transfer of chattels as security for a debt, the instrument will be treated as a chattel mortgage, if it shows that the parties intended a sale of the chattels as security.

**10. Chattel mortgages ⊚➡6—In case of doubt transaction treated as chattel mortgage not conditional sale.**

In case of doubt, a transaction will be treated as a chattel mortgage instead of a conditional sale, for no great injury can be perpetrated so long as the creditor recovers his debt, while much oppression may result by the inability of the debtor to repurchase the property.

**11. Corporations ⊚➡123(2)—General rules as to transfer of stock apply in distinguishing pledge from other transactions.**

General rules of construction of conveyances of personal property apply to the transfer of shares of stock in distinguishing a pledge thereof from other transactions.

**12. Corporations ⊚➡65—Shares of stock are "personal property."**

Shares of stock, and not the certificates representing them, are "personal property," and are made the subject of levy and sale, in view of Code, §§ 3470–3475.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Personal Property.]

**13. Corporations ⊚➡171—Stockbook evidence of membership.**

The stockbook is the evidence of ownership and the right to benefits and liabilities as such.

**14. Banks and banking ⊚➡40—Transfer of certificate of stock as security held chattel mortgage.**

Where a debtor indorsed on a certificate of bank stock a notation of sale and transfer as collateral security and appointed an attorney to transfer the same on the books of the bank, the transaction, though the instrument was not complete, is a chattel mortgage instead of a pledge.

Appeal from Circuit Court, Morgan County; O. Kyle, Judge.

Bill by W. B. Vaughn against Alice E. Oden, as administratrix, and others to compel the transfer of stock to be entered upon the book of the corporation and divest all

⊚➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

apparent right to same out of Alice Oden and the estate of her decedent. From a decree granting the relief prayed, respondent Alice E. Oden appeals. Reversed and remanded.

E. W. Godbey, of Decatur, for appellant.

There was no proof, and under section 3163, Code 1907, this was clearly error. The sale was not such as to cut off redemption. 2 Cobbey, Chattel Mortgages, §§ 938, 961, and 966. The paper was a mortgage. 83 Ala. 357, 3 South. 369. The mortgage was payable presently, and the mortgagees are barred by laches. 11 Corpus Juris, § 536.

W. T. Sanders, of Athens, and Callahan & Harris, of Decatur, for appellee.

Courts of equity have power to decree as here prayed. 132 Ala. 184, 31 South. 441. The paper was a pledge and not a mortgage. 11 Corpus Juris, 402 and 962; (C. C.) 11 Fed. 19; 182 Mich. 564, 148 N. W. 769, L. R. A. 1916B, 18; 21 R. C. L. 14; 2 N. Y. 443, 51 Am. Dec. 307; 37 Cal. 15, 99 Am. Dec. 237; (C. C.) 17 Fed. 782, and notes; 80 Ala. 78, 60 Am. Rep. 85; 58 Ala. 208; 187 Ala. 207, 65 South. 384.

This appeal was submitted under rule 46, Supreme Court Practice (178 Ala. xix, 65 South. vii), and the opinion of the court delivered by

THOMAS, J. The bill was filed to compel the Bank of Hartselle to transfer certain bank stock held by Mr. Oden in his lifetime and transferred to appellee as security for debt.

[1, 2] It is immaterial whether the transaction be regarded as a mortgage or a pledge; the equity of the bill is unquestioned. The learned trial judge well states that—

"The theory of some of the cases is that the remedy at law is inadequate and incomplete, and that a court of equity by analogy will give relief on the theory of specific performance. Birmingham Nat. Bank v. Roden, 97 Ala. 404, 11 South. 883; Cushman v. Thayer Mfg. Jewelry Co., 76 N. Y. 365, 32 Am. Rep. 315; 4 Pom. Eq. Juris. (3d Ed.) §§ 1411, 1412," and authorities collected. "* * * The jurisdiction is exercised by a court of equity * * * on the broader ground that a court of equity will take jurisdiction and try legal rights or titles when equitable rights depend thereon. In other words, when legal rights arise out of the breach of the contract, a court of equity will take jurisdiction of those questions and determine them, because the remedy at law is inadequate and incomplete, in that, equitable rights arise therefrom. * * * The insistence made by the demurrer, that the remedy at law was full, adequate, and complete, in that complainant is entitled to the legal remedy of mandamus, is without merit. 2 Thompson on Corp. (1st Ed.) § 2445; State v. Carpenter, 51 Ohio St. 83, 37 N. E. 261, 46 Am. St. Rep. 556." Iron R. R. Co. v. Fink, 41 Ohio St. 321, 52 Am. Rep. 84.

As an analogous ruling, see Boyett v. Hahn, 197 Ala. 439, 442, 73 South. 79, 80, where it is said that—

"When the contract of the parties provides no method of enforcing or foreclosing a lien, a court of equity in the exercise of its original jurisdiction may protect and foreclose such lien. 1 Pom. Eq. Jur. §§ 165–167; Averyt Drug Co. v. Ely-Robertson-Barlow Drug Co., 194 Ala. 507, 69 South. 931."

See, also, Morris v. Southern Realty & Const. Co., 203 Ala. 600, 84 South. 809.

[3] Courts of equity have jurisdiction, for the purposes invoked, to compel cancellation of the old stock and the issuance of stock in lieu thereof to complainant. Evins, Guardian, v. Cawthon, 132 Ala. 184, 188, 31 South. 441; 16 Cyc. 114.

[4] The decree overruling demurrer to the bill was that Alice E. Oden "must file an answer to the bill within ten days from" date. The Bank of Hartselle, as respondent, filed answer and cross-bill, and made as respondents thereto the complainant in the original bill (W. B. Vaughn) and Alice Oden, "both individually and as administratrix of the estate of A. A. Oden, deceased," on which process duly issued and service was had on the said Alice Oden, who thereafter did not appear and make answer. Decrees pro confesso on the original bill and on the cross-bill of the Bank of Hartselle were taken against the said Mrs. Oden, individually and as administratrix, on March 10, 1919. The respective notes of testimony, for complainant and the Bank of Hartselle, show that submission was had upon the respective decrees pro confesso against said Oden in her individual and representative capacity. The order of submission for final decree recites that—

"Complainant, being called, offers the following testimony: Orignal bill; decree pro confesso against defendant Oden in favor of complainant; admissions in the answer of the Bank of Hartselle; decree pro confesso on cross-bill of Bank of Hartselle against defendant Oden. The defendant and cross-complainant, Bank of Hartselle, being called, offers the following testimony: Answer and cross-bill; answer of complainant to cross-bill; decree pro confesso against Alice E. Oden, individually and as administratrix, on cross-bill."

The final decree recited that W. B. Vaughn is the owner of the five shares of capital stock of the Bank of Hartselle mentioned in the original bill, is entitled to have paid to him the dividend declared on said five shares of stock, and that the defendant "Alice E. Oden, individually and as administratrix of A. A. Oden, deceased, has no right, title, or interest in or to said stock or to said dividends." Order is contained therein for cancellation of original certificate of stock on surrender, and issuance of another certifi-

cate of stock in lieu thereof by the bank to complainant and in his name, and that—

The "Bank of Hartselle is relieved of all liability for said shares of capital stock to the defendant Alice E. Oden, individually and as administratrix of A. A. Oden, deceased. It is further ordered, adjudged, and decreed by the court that the defendant Alice E. Oden, as the administratrix of A. A. Oden, deceased, pay the costs of this suit, for which execution may issue."

An inspection of the record will show that in rendering the foregoing decree the provisions of Code, § 3163, to the effect that "In all cases in which decrees pro confesso are lawfully taken, the allegations of the bill are to be regarded as admitted, except in case of infant defendants, persons of unsound mind, executors, administrators, and bills for divorce," were overlooked. Howell v. Randle, 171 Ala. 451, 460, 54 South. 563. In Thornton's Adm'r v. Neal, 49 Ala. 590, 593, it is pointed out that the administratrix was merely a nominal party to the suit, and no relief was asked or granted against her. And the decree pro confesso being regularly entered against all other defendants, such nominal party could not complain that no proof was taken to establish complainant's case.

[5, 6] In the instant case the decree is against the said Alice E. Oden as an individual and as administratrix of the estate of A. A. Oden, deceased, and the costs are taxed against her in her individual and representative capacities. For noncompliance with the provisions of Code, § 3163, as to establishment of original complainant's right by a decree pro confesso taken against such administratrix rather than on proof, the judgment of the circuit court was clearly erroneous as binding the estate of A. A. Oden, deceased. The error in rendition of the decree in question is challenged by appropriate assignment on the part of Alice E. Oden in her individual capacity and not as administratrix of the estate of A. A. Oden, deceased. Rule 1, Sup. Ct. Prac. (page 1506, Civil Code); Carney v. M. C. Kiser Co., 200 Ala. 527, 76 South. 853. As to the sufficiency of the assignment of error, it will be noted that it is averred in the original bill that Alice E. Oden represented to the bank that the stock in question belonged to her and forbade the transfer thereof to complainant on the books of the bank; that the cross-bill avers that A. A. Oden died "on or about December, 1916," and that thereafter Alice Oden was appointed administratrix of his estate; that the said Alice Oden, either individually or as administratrix of said estate, contends and claims that the certificate of stock was never transferred to the complainant, or that it was transferred as collateral security for a debt; "that said debt has been paid, and that by the payment of said debt title to said certificate of stock and to said divi-

dend reverted back to her, either individually, as the widow of A. A. Oden, deceased, or to the estate of the said A. A. Oden." Thus is the case taken from the operation of the rule of Chavers v. Mayo, 202 Ala. 128, 79 South. 594, 596 (3), for the reason that the decree was injurious to appellant as the widow of A. A. Oden, deceased. The averments of the bill and cross-bill are such as to show, not only that the appellant assigning error had a beneficial interest in the stock in question, but that the relief prayed was such that the decree rendered cannot be affirmed in part and reversed and remanded in part as to Mrs. Oden's individual and representative capacities. The assignment of error challenges the failure of the court to require testimony, after decree pro confesso against the personal representative, in order that the estate of A. A. Oden, deceased, be bound thereby. For this error, the judgment of the court is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.

On Rehearing.

THOMAS, J. Appellant invokes a decision by the court as to whether the transfer of the shares of stock in question constituted a mortgage or a pledge.

The instant bill avers that—

"On or about the 19th day of July, 1904, A. A. Oden was indebted to complainant in a large sum of money, to wit, $2,000, and to secure said indebtedness transferred and assigned unto complainant as collateral security a certificate for five shares of the capital stock of the Bank of Hartselle, which certificate was numbered 7, and was issued to A. A. Oden by the Bank of Hartselle on the 14th day of December, 1903, and was signed by John S. Mitchell, cashier, and J. D. Pullen, president of said bank. At the time of the transfer of said certificate of five shares of stock the said A. A. Oden made the following indoresment thereon, viz.: 'For value received, I hereby sell, transfer and assign to W. B. Vaughn as collateral security five shares of the within-mentioned stock, and do hereby constitute and appoint Dr. W. A. Barclift as my attorney, to transfer the same on the books of the bank. This 19th day of July, 1904. [Signed] A. A. Oden. Witness: Arthur Stephenson.' "

And further:

"Complainant avers that the indebtedness due him from A. A. Oden to secure which the said Oden delivered to him the said stock as collateral security was due and unpaid at the time of the notice of sale and sale of said stock."

[7] A statement of the difference between a mere pledge, a mortgage, and an equitable charge or lien in the nature of a mortgage is not free from difficulty. The general distinction between a pledge and a mortgage is thus defined:

"A pledge differs from a chattel mortgage in three essential characteristics: (1) It may be constituted without any contract in writing, merely by delivery of the thing pledged. (2) It is constituted by a delivery of the thing pledged, and is continued only so long as the possession remains with the creditor. (3) It does not generally pass the title to the thing pledged, but gives only a lien to the creditor, while the debtor retains the general property. People v. Remington, 2 N. Y. Supp. 824, 826, 50 Hun, 602; Thurber v. Oliver (U. S.) 26 Fed. 224, 226. See, also, Mitchell v. Roberts (U. S.) 17 Fed. 776, 778; McFarland v. Wheeler (N. Y.) 26 Wend. 475 (citing Cortelyou v. Lansing [N. Y.] 2 Caines' Cas. 202); Wright v. Ross, 36 Cal. 414, 428; Lewis v. Graham (N. Y.) 4 Abb. Prac. 106, 109; Raper v. Harrison, 15 Pac. 219, 220, 37 Kan. 243. A mortgage differs from a pledge in that it is a conveyance of the title on condition, and may be valid without actual delivery. A mortgage is a pledge, and more; for it is an absolute pledge, to become an absolute interest if not redeemed at a certain time; while a pledge is a deposit of personal effects, not to be taken back except on payment of a certain sum, by express stipulation or the course of trade made to be a lien on them. 'In the case of a mortgage, the legal property passes with a condition of defeasance; in that of a pledge, the general property does not pass, but remains with the pawnor.' Luckett v. Townsend, 3 Tex. 119, 129, 49 Am. Dec. 723 (citing 2 Story Eq. § 1030; 4 Kent. Comm. 138; 2 Ves. Jr. 378; Cortelyou v. Lansing [N. Y.] 2 Caines' Cas. 200, 206); Brown v. Bement (N. Y.) 8 Johns. 96, 97." Words and Phrases, vol. 6, p. 5414.

As early as Sims v. Canfield, 2 Ala. 555, 560, our court declared that—

"A pledge is, when a thing is deposited as a security to be returned to the pledgor when he has redeemed it. In this the title is retained, although the possession is parted with. In a mortgage, the title is conveyed, subject to be divested if the condition of the mortgage is performed. Cortelyou v. Lansing, 2 Caines' Cases in Error, 200; Jones v. Smith, 2 Vesey."

This distinction is made in Jackson, Morris & Co. v. Rutherford, 73 Ala. 155, 157, as follows:

"There can be no legal mortgage of chattels, however, without a transfer of the legal title to the mortgagee, such as will become absolute on default. Such a mortgage is something more than a mere lien, or security. It is rather in the nature of a conditional sale, and operates to transfer such a legal title to the mortgagee, that to be divested the condition must be discharged in full. Jones' Chat. Mortg. §§ 1, 9. It differs from a mere pledge, in which the possession is parted with, and the title retained. * * * It is true that no technical words are necessary to constitute a mortgage which would be good at law, any more than in equity. Any words would be sufficient which serve to show a transfer of the mortgaged property as security for a debt. 'Whatever language may be used, if it shows that the parties intended a sale of the chattels as security, the instrument will be construed to be a (legal) mortgage.' Jones' Chat. Mort. §§ 1, 8, 9. This we take to be the decisive test, and nothing less will answer the purpose. * * * In Mervine v. White, 50 Ala. 388, the word 'mortgage' was held to import a conveyance of the legal title; and so in Glover v. McGilvray, 63 Ala. 508. In Ellington v. Charleston, 51 Ala. 166, an instrument was held to operate as a legal mortgage which declared that the creditor 'should have a lien' on a horse, the property of the debtor, 'to have and to hold' until the debt was paid. * * * In some of our decisions expressions are used which seem to confound the distinction between legal and equitable mortgages, but there is no case in our reports which really conflicts with the principles declared in this decision. Glover v. McGilvray, 63 Ala. 508; Brown v. Coats, 56 Ala. 439; Stearns v. Gafford, 56 Ala. 544."

In Alabama State Bank v. Barnes, 82 Ala. 607, 2 South. 349, the holding was that, where a banker advances money on the faith of cotton deposited in the borrower's own warehouse, taking as collateral security his warehouse receipt payable to bearer, unindorsed, and it is stipulated in writing that the borrower shall have a lien on the cotton and that it shall be kept in the borrower's warehouse for his benefit, with the right of sale without notice on default (the cotton being set apart in said warehouse, tagged and numbered to correspond with the receipts held by the banker), the facts do not show a perfected pledge, and do not pass the legal title to the banker, yet it was an executory contract of pledge or an equitable mortgage. Wood v. Holly Mfg. Co., 100 Ala. 326, 346, 13 South. 948, 46 Am. St. Rep. 56; Bush v. Garner, 73 Ala. 162, 166.

A bill in equity for account by an owner of corporate stock deposited as collateral security for a loan was denied in Gilmer v. Morris, 80 Ala. 78, 85 (60 Am. Rep. 85), where the court said:

"The transfer of the stock in controversy is something more than a mere pledge. It partakes of the nature of both a pledge and a mortgage, because the transferee holds both the possession and the title of the thing transferred. The chief difference between a pledge and a mortgage is, that in the former possession is transferred, and in the latter title, usually unaccompanied by possession. No reason is perceived why the two forms of security may not be combined in one as is here done. Casey v. Cavoroc, 96 U. S. 467, 477, 24 L. Ed. 779. In Nabring v. Bank of Mobile, 58 Ala. 204, it was said arguendo that a transfer of stock like that in the present case was rather a pledge than a mortgage, following the view expressed in Wilson v. Little, 2 N. Y. 443, 51 Am. Dec. 307. But the decision of this point was a dictum, inasmuch as it was immaterial and unnecessary; the same result following whether the transfer was construed to be the one or the other."

It should be said that Mr. Justice Clopton was not sitting and Mr. Chief Justice Stone stated his concurrence, in which he said of the transaction:

"Whatever class the present transaction may have previously belonged to, when by the transfer on the books the title to the stock became vested in Morris, it acquired the properties of a chattel mortgage; the thing mortgaged being in the possession of the mortgagee."

In Campbell v. Woodstock Iron Co., 83 Ala. 351, 357, 3 South. 369, there was no transfer of the stock on the books of the corporation, but the instrument declared a mortgage contained apt words of conveyance and showed an intention to transfer the mortgaged property as a security for debt. In this case Clopton, J., was not sitting, but the opinion was concurred in by Stone, C. J. The complaint averred a pledge in Sharpe v. Nat. Bank of Birmingham, 87 Ala. 644, 649, 7 South. 106, and was so treated in the opinion.

This question was considered in Birmingham Tr. & Sav. Co. v. Louisiana Nat. Bank, 99 Ala. 379, 13 South. 112, 20 L. R. A. 600, in a controversy between a stockholder, the corporation in which he held shares, and a nonresident corporation that had loaned such shareholder moneys on the security of his stock in the former corporation; Chief Justice Stone stating in response to the inquiry "whether the Birmingham Trust & Savings Company has a lien on the shares of its capital stock, the subject-matter of controversy, to secure the payment of the debts contracted with it by Boddie, the original holder and owner of the stock," that—

"The certificates were issued to him, and he remains registered as owner and holder on the books of the company. The question is, Will the asserted lien prevail over his prior pledge of the stock to the appellee, to secure the payment of a debt contracted on the faith of the pledge? The common law regards shares of stock in private corporations as personal property, capable of alienation or descent in any of the modes by which that species of property may be transferred. * * * So far as the statute declares the shares personal property, it is simply affirmative of the common law. * * * The requirement that a transfer of them must be made or registered on the books of the corporation does not prohibit a transfer in other modes, or render a transfer otherwise made absolutely invalid. It is invalid only as to the particular parties mentioned in the statute. A transfer not made or registered on the books of the corporation may not pass the legal title. But it is not intended to establish a rule applicable only to this particular species of property, prohibiting the creation therein of equities binding the legal title, or requiring that at all times the legal and equitable title must be united in the same person."

The justice proceeds with the discussion of "the pledge to the appellee," Louisiana National Bank, its precedence in point of time to the creation of the debt for the payment of which the Trust & Savings Bank sought to assert a statutory lien on the stock in question, and denying such lien on the ground of "notice of the pledge." The statement of facts recites:

"On the maturity of this note (to Louisiana National Bank) it was renewed by said Boddie, and Hudson, the said cashier of Birmingham Trust & Savings Company, wrote the written part of said note and indorsed in his handwriting on the back of said note the pledge of 300 shares of stock as collateral security."

The loan was reduced by a sale of a part of said stock, and Boddie executed a second note to the Louisiana National Bank, "with the pledge of the remaining 250 shares of stock indorsed thereon." It is apparent that by the agreement of the parties thereto the loan by the Louisiana National Bank to Boddie was secured by a pledge rather than by a mortgage, and was so treated by Judge Stone.

[8] It must result from the foregoing that in case of a written transfer of the legal title to personal property as security for debt, under such circumstances as to show that the parties intended a sale thereof, whether with or without a delivery of such property the instrument will be construed as a mortgage, though no method of foreclosure is provided in the instrument evidencing the transfer (Boyett v. Hahn, 197 Ala. 439, 73 South. 79; Averyt Drug Co. v. Ely-Robertson-Barlow Drug Co., 194 Ala. 507, 69 South. 931; Lewis v. Davis, 198 Ala. 81, 73 South. 419; Ellington v. Charleston, 51 Ala. 166), and that where (1) the possession of the property passes from the pledgor to the pledgee or his agent, (2) the legal title remaining in the pledgor, and (3) the pledgee has a lien on the property for the payment of a debt or performance of an obligation due him by the pledgor or some other person, the same is a pledge (Travelers' Ins. Co. v. Lazenby, 16 Ala. App. 549, 80 South. 25; Id., 202 Ala. 207, 80 South. 29; 31 Cyc. 890, 797; Rolfe v. Huntsville Lbr. Co., 8 Ala. App. 487, 62 South. 537).

[9, 10] Further applicable rules of construction of written instruments for the conveyance of personal property that may aid in classification in a doubtful case are that where words are employed that are sufficient to show a transfer of chattels as security for a debt, such instrument will be held a mortgage; that is, if it shows "that the parties intended a sale of the chattels as security." This is the decisive test. Jackson, Morris & Co. v. Rutherford, supra; Sims v. Canfield, supra. If there is doubt whether the transaction was a mortgage or a conditional sale, it will be held that the former was the intention of the parties. Robinson v. Farrelly, 16 Ala. 472; Locke v. Palmer, 26 Ala. 312; Crews v. Threadgill,

35 Ala. 334; M. B. & L. Ass'n v. Robertson, 65 Ala. 382; Turner v. Wilkinson, 72 Ala. 361; Irwin v. Coleman, 173 Ala. 175, 55 South. 492; Van Heuvel v. Long, 200 Ala. 27, 75 South. 339, 341. The reason is that no great injustice can be perpetrated so long as the creditor recovers his debt with legal interest, while much oppression may result by the inability of the debtor to repurchase the property at the time specified. An error of judgment, in other words, which may convert the transaction by construction into a mortgage would not be so oppressive or injurious as a like error which might change a mortgage into a conditional sale. Rapier v. Gulf City Paper Co., 77 Ala. 126.

[11-14] Such being the general rules of construction of conveyances of real and personal property, the same should obtain where the subject of the written instrument was the corporate stock of a bank. The shares of stock, not the certificate representing them, are personal property and made the subject of levy and sale. Code, §§ 3470–3475; White v. Rankin, 90 Ala. 541, 8 South. 118; Berney Nat. Bank v. Pinckard, 87 Ala. 577, 6 South. 364. The stockbook is the evidence of ownership and the right to benefits and liability as such. Walsh v. State ex rel. Cook, 199 Ala. 123, 74 South. 45, 2 A. L. R. 551; White v. Rankin, supra; Winter v. Montg. G. L. Co., 89 Ala. 544, 7 South. 773. In the instant transfer apt words of conveyance were used and a power of attorney was given by the mortgagor, Oden, to Dr. Barclift to transfer the stock on the books of the bank. That this was not done while Oden lived was no fault of the mortgagor, but of the mortgagee Vaughn. In this respect is the case differentiated from that of Birmingham Trust & Savings Bank v. Louisiana National Bank, supra, and becomes more nearly analogous to Gilmer v. Morris, supra, and is controlled by this and by Campbell v. Woodstock Co., supra, and Jackson v. Rutherford, supra.

---

⊜⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes