Hoyt Clark and Wallace Coile, defendants, appeal from a decree voiding the issuance to them of stock in Birmingham Motel Associates, Inc. (Motel), and reapportioning shares of stock held by the remaining shareholders. We affirm.
Clark and Coile are involved in the business of motel syndication and sales. They and William Smith formed Birmingham Motel Associates for the purpose of purchasing the Birmingham Airport Motel. The purchase price was $800,000.00, of which $200,000.00 was paid at the closing on July 29, 1982. Out of the $200,000.00, the seller paid $12,500.00 each to Clark and Coile as a commission for the sale. The trial court found and the evidence supports its finding that the $200,000.00 was from the following investors: *Page 886 
Mike Cowart $25,000.00 — equity capital
William Smith 50,000.00 — equity capital
 50,000.00 — loan to the corporation
Brian Price 50,000.00 — equity capital
Arthur Allen 25,000.00 — equity capital
 ---------
 $200,000.00 — Total

At the time of the hearing on December 20, 1982, the amount invested by each was as follows:
Mike Cowart $62,500.00 — equity capital
William Smith 50,000.00 — equity capital (The loan was
 repaid.)
Brian Price 50,000.00 — equity capital
David Byers 37,500.00 — equity capital
Arthur Allen 25,000.00 — equity capital
 ---------
 $225,000.00 — Total

According to Cowart and Byers, plaintiffs, they were to receive 12.5%, of the shares of stock in the corporation for every $25,000.00 invested, giving them title to 31.25%, and 18.75% of the shares, respectively, at the time of the hearing. However, despite frequent requests, they never received stock certificates until December 19, 1982.
They also believed that Clark and Coile had contributed $50,000.00 and together held 50% of the shares. They were unaware of any other investors. Cowart and Byers knew that Smith, Price, and Allen (the Smith group) had contributed $125,000.00 to the corporation, but believed the money to be a loan, not a capital investment in shares of stock.
Clark and Coile, in their testimony, portrayed the investments and holdings to be substantially different than Cowart and Byers contended that they were. They claimed that Cowart and Byers knew that $25,000.00 bought only a 5% interest and also knew that the investors included the Smith group. According to them, the breakdown of ownership of the stock was as follows:
 Mike Cowart $50,000.00 10%
 William Smith 50,000.00 10%
 Brian Price 50,000.00 10%
 Arthur Allen 25,000.00 5%
 David Byers 25,000.00 5%
 Hoyt Clark — 25%
 W. Coile — 25%

Clark and Coile admitted that they had made no cash contribution for stock, but asserted that they each received 25% of the shares for services performed for the corporation. They defined those services as "finding the deal [i.e., purchase of the motel], negotiating the deal, [and] handling the structuring of the deal."
Cowart and Byers testified that, by an agreement signed on September 27, 1982, by Clark, Coile, and Cowart, Cowart and Byers had an unconditional option to purchase all of Clark and Coile's stock for $100,000.00, giving Cowart and Byers 100% ownership of the stock. The transfer never took place. Instead, on December 16, 1982, one day after the option was to be exercised, Clark and Coile threatened to oust Cowart from his position as motel manager and assume the position themselves.
Cowart and Byers filed their complaint on December 16, 1982, requesting a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Clark, Coile, the Smith group, and the corporation from interfering with the management of the motel. They also requested the trial court to order Clark and Coile to specifically perform the agreement of September 27 and transfer their shares to them. The trial court granted the temporary restraining order and held a hearing on the preliminary injunction and permanent injunction.
At the close of the ore tenus hearing, which produced sharply disputed evidence, the trial judge issued the following decree:
 "ONE: There was no meeting of the minds or mutual understanding of the parties to the Agreement dated September 27, 1982 and it is, therefore, of no force or effect and not subject to an order of the Court requiring specific performance.
 "TWO: There was no meeting of the minds of the parties as to all of the essential features of any contract, agreement, mutual understanding or general *Page 887 
concept of the transaction involved and, therefore, none is enforceable between the parties.
 "THREE: `Shares of stock' are distinguishable from the certificates which represent them, they are personal property, and they become the property of the investors upon the payment of money to the corporation for the purchase of stock.
 "FOUR: For labor or services to be consideration for the issuance of shares of stock, such labor or services must have actually been performed for the corporation. The services performed by Clark and Coile prior to the closing of the purchase of the assets of the Motel, for which Clark and Coile received a $25,000.00 commission, were performed for the benefit of Clark and Coile, not the Motel. Clark and Coile performed no other services for the Motel for which shares of stock should be issued. Therefore, Clark and Coile own no shares of stock in the Motel.
 "FIVE: The total investment in the Motel is $225,000.00 and the amount of investment and the percentage of stock ownership of each of the parties is as follows:
 Cowart $62,500.00 27.8% Smith 50,000.00 22.2 Price 50,000.00 22.2 Byers 37,500.00 16.7 Allen 25,000.00 11.1 --------- ---- $225,000.00 100.0%
 The percentage of stock ownership came into existence upon the investment of money, and each party is entitled to have certificates of stock representing his percentage of ownership. All currently outstanding certificates representing shares of stock in the Motel are cancelled, and the management of the Motel shall forthwith issue new certificates in accordance with the percentages set out herein."
Clark and Coile appeal from this final decree. They argue that the trial court had no jurisdiction to grant the equitable relief of restructuring the corporation and that the evidence does not support the decree.
They first assert that the trial court had no equity jurisdiction to reissue the shares in the corporation because there was an adequate remedy at law available under § 8-6-19
(a), Ala. Code 1975 (Alabama Blue Sky Laws). Section 8-6-19 (a) allows a shareholder, who is fraudulently induced to purchase stock, "to recover the consideration paid for the security . . . upon the tender of the security." The availability of this remedy does not deprive the parties of the equitable remedy which they sought. By their complaint, they sought the issuance of shares in the corporation corresponding to their investment therein. Under the evidence, they are entitled to that relief under the facts of this case and are not required to proceed under § 8-6-1, et seq., even though they might have elected to do so.
The trial court had jurisdiction to order the issuance of shares in the corporation commensurate with the investment actually made by each contributor. Oden v. Vaughn, 204 Ala. 445,85 So. 779 (1920). The fact that Cowart and Byers failed to specifically request such relief in their original complaint is of no consequence here, because they orally amended the complaint and requested this relief at the close of the hearing without objection from the appellants. A.R.Civ.P. 15 (a).
We now examine the record to determine whether there is a factual basis for the decree.
The trial court held that the issuance of 50% of the stock in the corporation to Clark and Coile was illegal and void. Specifically, Judge Jack D. Carl stated:
 "It is true that under Alabama law consideration for shares of stock may be paid, in whole or in part, by labor or services actually performed (Section 10-2A-36 (a) Code of Ala. 1975), however, these services must have actually been performed, and future services shall not constitute payment or part payment for the issuance of shares in a corporation. (Section 10-2A-36 (b) Code). Clark and Coile received a commission of $25,000.00 for their participation in the acquisition *Page 888 
of the assets of the Motel. The Court finds that these services were performed for the benefit of Clark and Coile, not for the Motel. Any stock issued for these services was issued for no consideration and thus is void. [Rochell v. Oates, 241 Ala. 372, 2 So.2d 749 (1941)]. This Court finds from the evidence that Clark and Coile provided no services in connection with any attempts to syndicate the Motel which would authorize the issuance of any shares of stock to them."
The evidence supports this finding. Clark and Coile admitted that the seller approached them first to purchase the motel. It is also undisputed that Cowart initiated discussions with them regarding investment by him in the corporation and that Cowart subsequently introduced Byers to the project. Furthermore, Cowart and his lawyer worked on the plan for syndication, although it never did come to fruition. The trial court's finding, and that part of its decree based thereupon, will not be disturbed, since it is supported by credible evidence and is not clearly erroneous. Crow v. Florence Ice Coal Co.,143 Ala. 541, 39 So. 401 (1905).
Clark and Coile also claim there was no evidence to support the trial court's finding that Cowart paid $62,500.00 and Byers paid $37,500.00 for shares of stock. They argue that all the evidence clearly indicates that the last $25,000.00 ($12,500.00 each) Cowart and Byers paid was consideration for the option to purchase Clark and Coile's stock for $100,000.00, as per the September 27 agreement. Judge Carl found that the September 27 agreement containing the option was void on the ground of mutual misunderstanding. Cowart and Byers testified that the agreement demanded no consideration for the option. However, they claim the agreement did provide that Cowart and Byers could purchase another 12.5% interest in the corporation for $25,000.00, bringing their joint interest to 50%. This they claim to have done. Judge Carl was free to determine whether the $25,000.00 paid by Cowart and Byers bought an option, stock, or something else. He simply believed Cowart and Byers. We will not disturb his finding.
After determining that Clark and Coile held no interest in the corporation and what amounts actually were contributed by the remaining investors, Judge Carl reapportioned the ownership of the corporation to comport with the amounts each investor actually paid for the purchase of stock. Judge Carl's decision was equitable and fair. He treated the investors equally, giving each an interest in the corporation in direct proportion to the amount of his investment. The trial court has the power to mold its decree "so as to adjust the equities of all parties and to meet the obvious necessities of each situation."Coupounas v. Morad, 380 So.2d 800, 803 (Ala. 1980). Although Judge Carl did not give effect to either investment plan described by the parties, we affirm his decree. He could not give credence to the plan to grant a 12.5% interest for each $25,000.00 paid to the corporation, because that percentage would work only if the total investment were $200,000.00. Under that plan, at least one of the investors would not have received all of the shares to which he would be entitled. Likewise, if Judge Carl had given each a 5% interest for each $25,000.00 invested, Cowart and Byers would have received substantially less than the interest they had purchased.
We hold that the trial court had jurisdiction to grant equitable relief as sought by the complaint and that the record supports its findings of fact. The decree is proper, and we, accordingly, affirm.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur. *Page 889